940 F.2d 1413
 33 Fed. R. Evid. Serv. 1275
 UNITED STATES of America, Plaintiff-Appellee,
v.
Juan Carlos GONZALEZ, a/k/a Carlos Gonzalez, a/k/a J.
Garcia, Tomas Morales, a/k/a Tomasito, Israel Garcia, a/k/a
Flaco, Raciel Rodriguez, a/k/a Ray Rodriguez, Luis Sanchez,
Eliodoro Santos, a/k/a Lolo, Defendants-Appellants.
 No. 89-5401.
 United States Court of Appeals,
Eleventh Circuit.
 Sept. 4, 1991.
 
 Fred A. Schwartz, Stephen M. Klimacek, Adorno & Zeder, P.A., Rauol G. Cantero, Miami, Fla., for Gonzalez.
 Manuel Gonzalez, Jr., Miami, Fla., for Morales.
 Stephen A. LeClair, Entin, Schwartz, Margules & Lazarus, Miami, Fla., for Rodriguez.
 Harry M. Solomon, P.A., Miami, Fla., for Sanchez.
 William A. Meadows, Jr., Thomas W. Risavy, Miami, Fla., for Santos.
 James R. Gailey, Federal Public Defender, Miami, Fla., for Garcia.
 Terry L. Lindsey, Linda Collins Hertz, Lynne W. Lamprecht, Asst. U.S. Attys., Miami, Fla., for U.S.
 Appeal from the United States District Court for the Southern District of Florida.
 Before FAY and CLARK, Circuit Judges, and HENDERSON, Senior Circuit Judge.
 FAY, Circuit Judge:
 
 
 1
 Defendants-appellants were convicted on numerous counts involving the trafficking in marijuana. On appeal, they raise several claims, the most significant of which are: whether the district court properly denied motions to suppress evidence seized pursuant to a search warrant, whether certain extrinsic act evidence was properly admitted, whether the evidence was sufficient to support their convictions, and whether the jury was properly instructed. For the reasons that follow, we VACATE the convictions of Luis Sanchez on Counts 20-22, we VACATE the convictions of Juan Carlos Gonzalez on Counts 1-3, we VACATE the convictions of Raciel Rodriguez on Counts 17-19, and we VACATE the sentence of Tomas Morales and REMAND for resentencing. We reject all other claims by defendants-appellants and AFFIRM their convictions and sentences on all other counts.
 
 I. BACKGROUND
 
 2
 A federal grand jury in the Southern District of Florida handed down a twenty-seven count indictment charging Luis Sanchez, Juan Carlos Gonzalez, Eliodoro Santos, Raciel Rodriguez, Israel Garcia, Tomas Morales, and Jorge Hernandez[1] with numerous offenses relating to the trafficking in marijuana. The indictment included charges of conspiracy and continuing criminal enterprise, as well as charges of importation, possession with intent to distribute, and possession with intent to distribute on board a United States vessel in connection with specific marijuana import ventures.[2]
 
 
 3
 The indictment was based on evidence of numerous attempts to import marijuana into the United States, using several different vessels. Each venture involved a different crew, but followed the same general plan. Sanchez, either personally or through one of his agents--Gonzalez, Rodriguez, Hernandez, Morales, Garcia, or Santos--solicited a captain and a crew to import marijuana using a particular boat, usually some type of shrimping or fishing vessel. The crew was paid some money up front, with the remainder promised upon successful completion of the venture. One of the crew worked the ship's radio, and was given a code with different messages assigned specific numbers. The radio operator was told to communicate every eight hours and to use only the code numbers. Sanchez also detailed the route the vessel was to follow. For each venture, the vessel was to rendezvous with another boat containing the marijuana, generally at either a place called Misteriosa Bank, or at Lighthouse Point, off the coast of Belize. If the rendezvous was successful, the marijuana was transferred to the first vessel for transport back to the United States. At a designated place, the marijuana was then to be transferred to smaller boats which were to bring it ashore. The original vessel was then supposed to be cleaned, and made to look as if it had been out legitimately, for example by putting some shrimp in the hold. For various reasons, only one of the ventures charged in the indictment was successful. After a jury trial, all defendants were convicted of the conspiracy counts as well as of offenses related to at least one importation venture.[3]
 
 II. DISCUSSION
 A. Motion to Suppress
 
 4
 On September 23, 1987, federal agents executed a search warrant for the residence of appellant Luis Sanchez. During the search, agents seized three address books and a locked briefcase belonging to appellant Juan Carlos Gonzalez, who is the brother-in-law of Sanchez. The briefcase, which was opened at the scene, contained $50,000 in United States currency, various documents which the government introduced as a marijuana bale list, and Gonzalez' passport. Both Sanchez and Gonzalez appeal the denial of their motions to suppress evidence seized as a result of the search of Sanchez' house.
 
 1. Sanchez' House
 
 5
 Luis Sanchez makes a two-pronged attack on the search warrant and its supporting affidavit.[4] First, he argues that the affidavit was likely to mislead the magistrate into believing that there was more evidence of criminal activity on his part than actually existed. The affidavit contained thirty numbered paragraphs, only the last five of which specifically referred to Luis Sanchez. (R1:132 Exhibit B) Further, paragraphs 21-25 referred to the activities of a Julio Sanchez, who is not related to Luis Sanchez. Appellant Sanchez argues that unless reviewed carefully, the magistrate could unwittingly have assumed that the Sanchez referred to in paragraphs 21-25 and Luis Sanchez were the same person, and that the illegalities discussed in paragraphs 23-25 were attributable to Luis Sanchez.[5] Sanchez further argues that the warrant did not set forth a basis to determine probable cause, so that the good faith exception to the warrant requirement does not apply. See United States v. Leon, 468 U.S. 897, 923, 104 S.Ct. 3405, 3420, 82 L.Ed.2d 677 (1984). We disagree.
 
 
 6
 First, we find it unlikely that the magistrate was confused or misled by the statements regarding the two Sanchezes. The information about Julio Sanchez was relevant to understanding the circumstances detailed in the affidavit and was not intermingled with information about appellant Luis Sanchez.
 
 
 7
 Second, the issuing magistrate clearly had a substantial basis for determining probable cause under the totality of the circumstances of this case. A substantial basis for probable cause exists where the totality of the circumstances set forth in the affidavit provides sufficient information for a magistrate to determine that "there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238-39, 103 S.Ct. 2317, 2332-33, 76 L.Ed.2d 527 (1983). Great deference is accorded to the magistrate's determination of probable cause. Leon, 468 U.S. at 914, 104 S.Ct. at 3416; Gates, 462 U.S. at 236, 103 S.Ct. at 2331. In the instant case, two magistrates--the issuing magistrate and the magistrate who conducted the hearing on Sanchez' motion to suppress--and one district judge reviewed the warrant affidavit. All three found it provided probable cause to believe that documents and United States currency related to the importation and distribution of controlled substances in violation of the law would be found in the Sanchez residence. We agree with the other judges who have reviewed this affidavit and find it provided a substantial basis for determining probable cause.[6] We therefore find that the district court properly denied the motions to suppress.
 
 2. Gonzalez' Briefcase
 
 8
 Even though we find that the search of the Sanchez house was valid, we consider separately the search of the locked briefcase belonging to Gonzalez that was found in the house. See United States v. Freire, 710 F.2d 1515 (11th Cir.1983) (search of briefcase found in co-defendant's car considered separately from search of car), cert. denied, 465 U.S. 1023, 104 S.Ct. 1277, 79 L.Ed.2d 681 (1984). Gonzalez argues[7] that even if the search of Sanchez' house was valid pursuant to the search warrant, that warrant could not justify the search of the locked briefcase which the agents knew belonged to Gonzalez. We disagree.
 
 
 9
 The items sought in the search of Sanchez' house were documents and United States currency related to the illegal importation and distribution of controlled substances. A briefcase could easily contain such items. Assuming without deciding that Gonzalez had a legitimate expectation of privacy in his locked briefcase,[8] we hold that the valid search warrant for Sanchez' house provided sufficient authorization for the search of the briefcase found in the house. See United States v. Morris, 647 F.2d 568, 572-73 (5th Cir. Unit B 1981) (search of locked jewelry box justified by valid search warrant for premises, though it would be different if "the objects sought in the warrant were of a size that would not fit in the box.").[9] We therefore affirm the denial of the motions to suppress.
 
 B. Extrinsic Evidence
 
 10
 During the trial, the government introduced evidence of marijuana smuggling ventures involving two vessels, the "Don Christobal" and the "Sea Viking." Evidence of these ventures implicated appellant Sanchez, but these ventures were not listed in the indictment. The government also introduced evidence that Sanchez and his wife had submitted several false financial applications. This evidence was introduced as extrinsic act evidence pursuant to Federal Rule of Evidence 404(b).[10] Appellants Sanchez, Garcia, and Morales[11] challenge the admission of this extrinsic act evidence.[12] In addition, appellants Sanchez, Garcia, Morales, and Rodriguez challenge admission of evidence of the "Sea Viking" venture, claiming it was part of a separate conspiracy and not part of the conspiracies charged in the indictment.
 
 
 11
 The admission of extrinsic act evidence pursuant to Rule 404(b) is reviewed for a clear abuse of discretion.[13] United States v. Hooshmand, 931 F.2d 725, 736 (11th Cir.1991); United States v. Eirin, 778 F.2d 722, 731 (11th Cir.1985). For this evidence to be admissible, the government must "show that (1) the evidence is relevant to an issue other than a defendant's character and (2) the probative value of the evidence outweighs any prejudicial effect." Hooshmand, 931 F.2d at 736; United States v. Dothard, 666 F.2d 498, 501 (11th Cir.1982); see also United States v. Beechum, 582 F.2d 898, 911 (5th Cir.1978), cert. denied, 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979).[14] The latter requirement is essentially that stated in Federal Rule of Evidence 403.[15] Beechum, 582 F.2d at 911. Further, this evidence is admissible "if the jury could reasonably find by a preponderance of the evidence that the defendant committed the extrinsic act." Hooshmand, 931 F.2d at 736 (citing Huddleston v. United States, 485 U.S. 681, 690, 108 S.Ct. 1496, 1501, 99 L.Ed.2d 771 (1988)). For the reasons that follow, we find the evidence in this case was properly admitted.
 
 
 12
 1. The "Don Christobal"
 
 
 13
 The "Don Christobal" incident occurred in August of 1985. United States Customs officials boarded the vessel off Marco Island, Florida and found marijuana. There was testimony that the officers compared the individuals on board with photographs on driver's licenses taken from them, that this information was written down, and that it was later passed on to Deputy Sheriff Tom Storrer. Storrer testified that the information he had received included that Luis Sanchez had been on board the vessel, and that the driver's license for the man named Luis Sanchez on board the vessel matched that of appellant Sanchez.
 
 
 14
 Appellants argue that this evidence is inadmissible under Rule 404(b) because the evidence is insufficient for the jury to reasonably conclude that Luis Sanchez committed the act and because the act was not sufficiently related to the acts charged in the indictment to have any probative value. We disagree. The testimony regarding the circumstances surrounding the identification of the people on board the vessel and the chain of custody of that information is certainly sufficient to allow the jury to reasonably conclude that appellant Sanchez was on that vessel when it was boarded by customs officials. Moreover, this incident occurred on August 25, 1985, just days before the time of the conspiracies charged in the indictment. This evidence is therefore relevant and admissible to show the "defendant's ability and experience to execute a fraudulent scheme." Hooshmand, 931 F.2d at 736; see also United States v. Garcia, 880 F.2d 1277, 1278 (11th Cir.1989). In this context, it is also material to show Sanchez' intent, knowledge, and common scheme or plan.
 
 
 15
 Further, although this evidence had no probative value as to the other appellants, its admission was neither more nor less prejudicial than the evidence of various other substantive acts in which they were not personally involved that was introduced throughout the joint trial. The jury's ability to sort out the evidence as to each defendant was amply demonstrated by its acquittal of appellants Garcia and Rodriguez on three of the counts with which they were charged. We find no abuse of discretion by the district court in admitting evidence of the "Don Christobal" incident.
 
 
 16
 2. The "Sea Viking"
 
 
 17
 The "Sea Viking" venture occurred from October 1987 to January 1988, prior to the end of the conspiracies charged in the indictment. A government witness testified that he was hired by appellant Sanchez to bring marijuana into the United States on board the "Sea Viking." The witness testified that Sanchez gave him the route to follow (passing by Misteriosa Bank), radio frequencies, and a communications code. This load was intercepted by the Coast Guard at the end of January 1988, and 15,500 pounds of marijuana were seized. The court admitted the "Sea Viking" evidence as part of the conspiracies charged in the indictment, on the basis that none of the co-defendants had affirmatively withdrawn from those conspiracies.
 
 
 18
 Appellants argue that this evidence was improperly admitted under Rule 404(b) because it is only relevant to show appellant Sanchez' supposed propensity to commit the type of crimes with which he is charged, contrary to United States v. Goodwin, 492 F.2d 1141, 1153 (5th Cir.1974), and its progeny. However, given that this incident took place within the time frame of the conspiracies charged in the indictment, and that the modus operandi of this venture was substantially similar to that of the ventures charged in the indictment, this evidence was clearly relevant to show motive, intent, knowledge, and common scheme or plan.
 
 
 19
 Appellants also argue that because only Sanchez among the defendant's was implicated in the "Sea Viking" venture, it was a wholly separate incident and not admissible as part of the conspiracies charged in the indictment.[16] Whether the evidence shows one conspiracy or multiple conspiracies is primarily a jury question. See, e.g., United States v. Stitzer, 785 F.2d 1506, 1518 (11th Cir.), cert. denied, 479 U.S. 823, 107 S.Ct. 93, 93 L.Ed.2d 44 (1986). There is no requirement that every member of the conspiracy participate in every transaction to find a single conspiracy, nor must the evidence show that each conspirator knew the others or the details of each venture making up the conspiracy. Id. A single conspiracy may be found where there is a "key man" who directs the illegal activities, while various combinations of other people exert individual efforts towards the common goal. Id.
 
 
 20
 In this case, the evidence relating to the "Sea Viking" was properly admitted by the district court as an uncharged substantive offense which was proof of the continuing criminal enterprise as well as proof of the underlying conspiracies. See United States v. Alvarez-Moreno, 874 F.2d 1402, 1408 (11th Cir.1989), cert. denied, --- U.S. ----, 110 S.Ct. 1484, 108 L.Ed.2d 620 (1990). We believe the jury reasonably could find that Sanchez and Gonzalez were "key men," and that Rodriguez, Morales, Santos, and Garcia were participants in the overall scheme to varying degrees. There is sufficient evidence that each defendant had a general knowledge of the overall goal of the conspiracies, i.e., the importation and possession of marijuana with intent to distribute it. The "Sea Viking" venture was within the time frame of the conspiracies charged in the indictment, and no evidence was presented that any of the appellants withdrew from the conspiracies. We therefore find no abuse of discretion by the district court in admitting this evidence as part of the conspiracies charged in the indictment.[17]3. Financial Applications of Sanchez and his Wife
 
 
 21
 Appellant Sanchez also challenges two exhibits introduced by the government that show Sanchez and his wife had made false statements regarding the sources of their increased wealth. This evidence included loan applications filed by both, a health insurance form filed by Sanchez' wife stating that she worked for a company, and that company's wage reports showing that she did not work for that company during that time. This evidence was introduced for the purpose of proving an increase in wealth during the course of the enterprise, and that Sanchez attempted to conceal the true source of the increased wealth. Sanchez concedes that the government is entitled to introduce evidence of an increase in wealth, but argues that this evidence is only relevant to show bad character contrary to Rule 404(b).[18] We disagree.
 
 
 22
 The possession of large amounts of unexplained cash in connection with evidence of narcotics trafficking on a large scale has long been admissible to show the doing of the act connected with those proceeds. United States v. $364,960.00 in U.S. Currency, 661 F.2d 319, 324 (5th Cir. Unit B 1981). The government was entitled to show that Sanchez had experienced a sudden acquisition of large sums of money from unexplained sources in order to prove that he had received substantial income and resources from the continuing criminal enterprise with which he was charged. United States v. Lattimore, 902 F.2d 902, 903 (11th Cir.), cert. denied, --- U.S. ----, 111 S.Ct. 272, 112 L.Ed.2d 228 (1990); United States v. Chagra, 669 F.2d 241, 256 (5th Cir.), cert. denied, 459 U.S. 846, 103 S.Ct. 102, 74 L.Ed.2d 92 (1982). Although the sudden acquisition of money by a defendant charged with a crime involving pecuniary gain is admissible without tracing the source, Lattimore, 902 F.2d at 903, the probative value of such pecuniary gain increases if the prosecution is able affirmatively to eliminate a defendant's claim of a legitimate source. Here, evidence of appellant's apparent attempt to conceal the true source of his sudden wealth by falsely listing a source that appeared to be legitimate is relevant to negate any legitimate source for these funds, and is not unfairly prejudicial. We find no abuse of discretion in admitting this evidence.
 
 C. Sufficiency of the Evidence
 
 23
 All of the appellants except Gonzalez raise the issue of the sufficiency of the evidence with respect to some or all of the counts for which they were convicted. In evaluating the sufficiency of the evidence, we must view the evidence in the light most favorable to the government. United States v. Gutierrez, 931 F.2d 1482, 1488 (11th Cir.1991); United States v. Graziano, 710 F.2d 691, 697 (11th Cir.1983), cert. denied, 466 U.S. 937, 104 S.Ct. 1910, 80 L.Ed.2d 459 (1984). In so doing, we draw all reasonable inferences in favor of the jury's verdict. Gutierrez, 931 F.2d at 1488; United States v. Thomas, 676 F.2d 531, 535 (11th Cir.1982). In a criminal case, evidence is sufficient to support a conviction "if a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt." Graziano, 710 F.2d at 697.
 
 1. Sanchez
 
 24
 Luis Sanchez was convicted of all counts charged in the indictment. He claims the evidence is insufficient to support his conviction on Counts 20-22, or on Count 25.
 
 
 25
 Counts 20-22 charged Sanchez with offenses arising out of an incident involving the vessel "Melissa" in October of 1986. The government presented no evidence that Sanchez was involved in the incident, nor was there any physical documentation connecting him to that incident. The government concedes that since no jury instruction was given on vicarious liability in an ongoing conspiracy pursuant to Pinkerton v. United States, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946), the evidence was insufficient to show that Sanchez was connected with the "Melissa" incident. Brief of the United States at 56. We therefore VACATE the convictions of Luis Sanchez on Counts 20, 21, and 22.
 
 
 26
 Count 25 charged Sanchez with the offense of continuing criminal enterprise. 21 U.S.C. Sec. 848 defines the offense as follows:
 
 
 27
 (c) ... a person is engaged in a continuing criminal enterprise if--
 
 
 28
 (1) he violates any provision of this subchapter or subchapter II of this chapter the punishment for which is a felony, and
 
 
 29
 (2) such violation is a part of a continuing series of violations of this subchapter or subchapter II of this chapter--
 
 
 30
 (A) which are undertaken by such person in concert with five or more other persons with respect to whom such person occupies a position of organizer, a supervisory position, or any other position of management, and
 
 
 31
 (B) from which such person obtains substantial income or resources.
 
 
 32
 Sanchez contends that paragraph (2)(B), the substantial income or resources requirement, was not satisfied. We disagree.
 
 
 33
 Sanchez correctly notes that the evidence shows that only one of the marijuana ventures alleged in the indictment was successful. Sanchez then argues that although he may have realized substantial income or resources from that one incident, he did not receive substantial income or resources from a "continuing series of violations." However, the government need not trace substantial income or resources realized by the defendant during the course of the enterprise to specific violations; it is sufficient if the government shows, by either direct or circumstantial evidence, that the defendant derived substantial income or resources from his operation of the entire enterprise. See United States v. Draine, 811 F.2d 1419, 1421 (11th Cir.), cert. denied, 484 U.S. 827, 108 S.Ct. 94, 98 L.Ed.2d 55 (1987); Chagra, 669 F.2d at 256. Thus, a defendant's acquisition of substantial income or resources from a continuing criminal enterprise may be demonstrated either by proof that defendant acquired substantial resources from just one of the enterprise's operations, see Graziano, 710 F.2d at 697-99 (one successful operation by the enterprise involving 4,800 pounds of marijuana sufficient), or by proof of the sudden acquisition or expenditure of large sums of money, even though the source of these funds is not specifically traced to the illegal acts charged in the indictment. Lattimore, 902 F.2d at 903; Chagra, 669 F.2d at 256.
 
 
 34
 In this case, the government demonstrated that appellant Sanchez received substantial resources from the successful "Ross and Bess" operation, in which approximately 30,000 pounds of marijuana were imported, and as a result of which Sanchez paid crew members and the vessel's owner over $200,000. The government also demonstrated that Sanchez experienced a substantial unexplained increase in personal wealth of over $300,000 during the course of the enterprise, as evidenced by his bank statements, home improvements, and financial statements. This evidence is clearly sufficient to prove that Sanchez received substantial income and resources as required by 21 U.S.C. Sec. 848.
 
 2. Rodriguez
 
 35
 Rodriguez argues that the evidence was insufficient to support his convictions for Counts 16-19. Count 16 involved the unsuccessful venture of the "Ross and Bess" in March 1986. Counts 17-19 deal with importation and possession of marijuana with intent to distribute involving the vessel "Lady L." The government again concedes that as no Pinkerton instruction was given, there was insufficient evidence to support Rodriguez' conviction on Counts 17-19. Brief of the United States at 56. We therefore VACATE the conviction of Raciel Rodriguez on Counts 17, 18, and 19.
 
 
 36
 As to Count 16, the record shows that Rodriguez came to Miami with Sanchez to pick up Acosta, a crew member for the "Ross and Bess," in order to take him to Key West for the unsuccessful March 1986 marijuana run, as they had for a previous "Ross and Bess" venture. Rodriguez and Sanchez also met with Acosta and the other crew members once they had reached Key West prior to their departure. Since Rodriguez was charged with aiding and abetting (18 U.S.C. Sec. 2), the government was only required to prove that he voluntarily associated himself with the venture and sought to make it succeed. United States v. Leavitt, 878 F.2d 1329, 1338 (11th Cir.), cert. denied, --- U.S. ----, 110 S.Ct. 415, 107 L.Ed.2d 380 (1989); United States v. Collins, 779 F.2d 1520, 1528 (11th Cir.1986). Given Rodriguez' proven extensive prior involvement with the enterprise, the jury was entitled to infer that he knew of the March 1986 "Ross and Bess" venture and acted with the intent to make it succeed. See Leavitt, 878 F.2d at 1338. We therefore find the district court properly denied Rodriguez' motion for acquittal.
 
 3. Santos
 
 37
 Appellant Santos argues that there was insufficient evidence to sustain his conviction on Counts 2, 3, 10, 12, and 17 of the indictment. We disagree.
 
 
 38
 Counts 2 and 3 charged Santos with conspiracy to possess marijuana with intent to distribute and conspiracy to possess marijuana with intent to distribute marijuana on board United States vessels, respectively. Santos does not challenge the sufficiency of the evidence as to the conspiracy charged in Count 1, conspiracy to import marijuana. Because of the factually overlapping and intertwining nature of these conspiracies, none of the conspiracies could have existed without the others, and none of the people involved in orchestrating the importation conspiracy reasonably could have isolated himself from a conspiracy involving the method of importation--possession of large quantities of marijuana (possession with intent to distribute) and possession of large quantities of marijuana on board a United States vessel (possession with intent to distribute on board a United States vessel).
 
 
 39
 Moreover, the evidence conclusively demonstrates that Santos knew that he was participating in and indeed was an active member of all three conspiracies. He recruited essential crew members for the express purpose of picking up marijuana loads outside of the United States and bringing them here. He offloaded one of these marijuana boats in United States waters, and he distributed some of the proceeds from the sold marijuana. These acts clearly demonstrate Santos' personal knowledge of all aspects of the conspiracies charged in the indictment.
 
 
 40
 Santos also challenges his convictions for aiding and abetting the possession of marijuana in connection with both the final "Ross and Bess" venture (Counts 10 and 12) and the "Lady L" venture (Count 17). The evidence reflects that Santos participated in the offloading of marijuana from the "Ross and Bess," and personally distributed proceeds from that successful venture to the "owner" of the boat. Further, he took crew members for the last "Ross and Bess" venture to meet with Sanchez and Rodriguez in Key West before they left for the ill-fated marijuana run. Those same crew members became the crew for the "Lady L" after the "Ross and Bess" sank. Santos also recruited the captain for another vessel, the "Monica," which acquired one half of the marijuana from the "Lady L" as part of a prearranged plan. Before the "Monica" left port, Santos drove the captain and two of the crew members to Miami to meet with Sanchez in anticipation of the trip. Given Santos' extensive involvement with the enterprise, the evidence is sufficient for the jury to find Santos voluntarily associated himself with the "Ross and Bess" and "Lady L" ventures and actively sought to make them succeed. See Leavitt, 878 F.2d at 1338.
 
 4. Garcia and Morales
 
 41
 All defendants made motions for judgments of acquittal pursuant to Federal Rule of Criminal Procedure 29 at the close of the government's case, which the district court denied. However, as neither Garcia nor Morales renewed their Rule 29 motions after presenting evidence on their behalf,[19] this court will only review their claims for a manifest miscarriage of justice, i.e., to determine if " 'the evidence on a key element of the offense is so tenuous that a conviction would be shocking.' " United States v. Tapia, 761 F.2d 1488, 1492 (11th Cir.1985) (quoting United States v. Landers, 484 F.2d 93, 94 (5th Cir.1973) (footnote omitted), cert. denied, 415 U.S. 924, 94 S.Ct. 1428, 39 L.Ed.2d 480 (1974)).
 
 
 42
 Garcia argues that the evidence was insufficient to support his conviction on Counts 1-3, the conspiracy counts, and 10-12, regarding the second "Ross and Bess" venture. We disagree.
 
 
 43
 Although Garcia cannot be described as a major player in this game, we do not find the evidence relating to these counts so lacking as to create a manifest miscarriage of justice. A defendant may be convicted of a conspiracy even if he played only a minor role in its operation. See, e.g., United States v. Roper, 874 F.2d 782, 787 (11th Cir.), cert. denied, --- U.S. ----, 110 S.Ct. 189, 107 L.Ed.2d 144 (1989). In this case, the record reflects that Garcia spoke to James Wheeler and Mike Rhodes about making a marijuana run, and told them that the people in charge of the load would be coming down from Miami. These people were Sanchez and Rodriguez. There was a meeting between Sanchez, Rodriguez, Wheeler, and Rhodes at Garcia's trailer the following day where the second "Ross and Bess" marijuana venture was discussed. Further, Wheeler testified that the day before the "Ross and Bess" left port, he met another crew member, Acosta, at Garcia's trailer.
 
 
 44
 When this evidence is construed most favorably to the government, it shows that Garcia recruited two crew members to make a marijuana run for the organization in connection with the second "Ross and Bess" venture, and arranged a meeting between them and the key organizers, Sanchez and Rodriguez. Moreover, although there is no evidence as to whether Garcia was present at this meeting, he clearly facilitated its occurrence by allowing the principals to use his residence. There is sufficient evidence that Garcia knew of the conspiracies charged in Counts 1, 2, and 3, and that he voluntarily participated in them. Also, he was clearly aware of the second "Ross and Bess" venture, voluntarily associated himself with the venture by recruiting crew members, and acted as a facilitator in order to make the venture succeed.
 
 
 45
 Morales argues that the evidence was insufficient to support his conviction on Counts 1-3, the conspiracy charges, or on Counts 4-6, pertaining to the vessel "Bobby." The evidence shows that Morales recruited Richard Washington to captain the vessel "Aquarius" for the purpose of making a marijuana run, and that Morales handed Washington and his friend $6,000 in front money which Sanchez had agreed to pay them for smuggling the marijuana. The evidence also shows that Morales recruited two crew members for the "Bobby," Luis Ramirez and Walter Keith, and offered to pay James Prather $50,000 to be the captain. Morales gave Ramirez $300 front money and told him where they would be picking up the marijuana. Before the "Bobby" left port, Morales told Ramirez and Keith that the more marijuana they loaded aboard, the more they would be paid. Further, Morales offered to speak to Sanchez about getting some money for Ramirez after the "Bobby" venture failed. This evidence is clearly sufficient to support Morales' convictions for conspiracy, as well as for the underlying substantive offenses involving the "Bobby."
 
 D. Jury Instructions
 
 46
 Appellants raise several challenges to the district court's jury instructions. Appellants Sanchez and Morales challenge the district court's omission of an instruction to the jury defining "attempt." Appellants Garcia and Morales argue that the district court erred by not instructing the jury on the issue of their withdrawal from the alleged conspiracy. Lastly, appellant Sanchez also claims error in the court's instruction that none of the attorneys in the case were affiliated with the attorney who represented him during the time frame of the alleged conspiracies.
 
 
 47
 As none of the appellants either submitted proposed instructions or objected to the court's jury charge, our review is limited to plain error. United States v. Solomon, 856 F.2d 1572, 1575 (11th Cir.1988), cert. denied, 489 U.S. 1070, 109 S.Ct. 1352, 103 L.Ed.2d 820 (1989); United States v. Pepe, 747 F.2d 632, 675 (11th Cir.1984). Jury instructions will only be reversed "for plain error if, viewing the court's charge as a whole, it was so clearly erroneous as to result in a substantial likelihood of a grave miscarriage of justice," Pepe, 747 F.2d at 674 n. 78, "or the error 'seriously affects the fairness, integrity, or public reputation of judicial proceedings.' " Id. at 675 (quoting United States v. Thevis, 665 F.2d 616, 645 (5th Cir. Unit B), cert. denied, 459 U.S. 825, 103 S.Ct. 57, 74 L.Ed.2d 61 (1982)). In our judgment, none of the alleged errors raised by appellants constitutes plain error requiring reversal.
 
 
 48
 First, it is well settled that terms which are within the common understanding of the jury need not be defined in the jury instructions. Id. at 675 n. 78 (and cases cited therein). "Attempt" is not an overly technical or ambiguous term, nor is it beyond the common understanding of the jury. Id. It is unlikely that the court's failure to define "attempt" confused the jury or resulted in a grave miscarriage of justice. We find no plain error in the court's failure to define "attempt" in its jury instructions.
 
 
 49
 Second, neither Garcia nor Morales requested an instruction on withdrawal from the conspiracy, and neither presented evidence to support such an instruction. Withdrawal is an affirmative defense. United States v. Finestone, 816 F.2d 583, 589 (11th Cir.), cert. denied, 484 U.S. 948, 108 S.Ct. 338, 98 L.Ed.2d 365 (1987). Accordingly, the defendant has the substantial burden of proving "that he undertook affirmative steps, inconsistent with the objects of the conspiracy, to disavow or to defeat the conspiratorial objectives, and either communicated those acts in a manner reasonably calculated to reach his co-conspirators or disclosed the illegal scheme to law enforcement authorities." Id. (emphasis in original). Counsel in this case have merely argued that Garcia and Morales must have withdrawn because they were incarcerated during the latter part of the time frame of the conspiracy. However, neither arrest nor incarceration automatically triggers withdrawal from a conspiracy. See United States v. Rosenthal, 793 F.2d 1214, 1244 (11th Cir.), modified on other grounds, 801 F.2d 378 (1986), cert. denied, 480 U.S. 919, 107 S.Ct. 1377, 94 L.Ed.2d 692 (1987). Under these circumstances, neither Garcia nor Morales was entitled to an instruction on withdrawal.
 
 
 50
 Lastly, the district court's instruction that none of the trial attorneys were associated with the attorney who was allegedly part of the criminal enterprise was requested by counsel for Garcia and was acquiesced in by counsel for all other defendants, including trial counsel for Sanchez. Nevertheless, Sanchez argues on appeal that the instruction had the effect of telling the jury that it should credit the evidence of the involvement of the attorney, which was damaging to Sanchez, and thereby lessened the burden on the government to prove every element of its case. We disagree. At most, the instruction may have corroborated that an attorney by such a name existed. As it is extremely doubtful that this seriously affected the fairness of these judicial proceedings, we reject appellant's claim.
 
 E. Other Claims
 
 51
 Appellant Garcia argues that he was severely prejudiced by being tried with the other defendants because the majority of evidence presented at trial had nothing to do with him.[20] In order to successfully challenge the denial of a motion for severance, the appellant must show that the trial court abused its discretion, Gutierrez, 931 F.2d at 1491, i.e., that "he was unable to receive a fair trial and suffered compelling prejudice." Leavitt, 878 F.2d at 1340. To show compelling prejudice, the appellant must prove "that the jury could not follow the trial court's instructions and separate the evidence relevant to each appellant." Id. Generally, co-conspirators should be tried together; cautionary instructions to the jury to consider the evidence as to each defendant separately are presumed to guard adequately against prejudice. Id. Such cautionary instructions were given in this case. Garcia points to nothing in the record to demonstrate prejudice. Indeed, as both Garcia and Rodriguez were acquitted on three of the counts with which they were charged, the jury in this case was clearly able to separate the evidence with regard to the different defendants. We therefore find no abuse of discretion.
 
 
 52
 Gonzalez argues, and the government concedes, Brief of the United States at 90, that his convictions on Counts 1 through 3 for conspiracy merged with his conviction for continuing criminal enterprise in Count 26.[21] See Rosenthal, 793 F.2d at 1246 (citing United States v. Harrington, 761 F.2d 1482, 1487 (11th Cir.1985)). We therefore VACATE the convictions on Counts 1, 2 and 3 of Juan Carlos Gonzalez.[22]
 
 
 53
 Lastly, the judgment for Tomas Morales signed by the trial court was labelled "Judgment Including Sentence Under the Sentencing Reform Act." Morales argues, and the government concedes, Brief of the United States at 90, that this was error, given that this is a pre-Sentencing Reform Act case. We therefore VACATE Morales' sentence and REMAND for resentencing consistent with this opinion.[23]
 
 III. CONCLUSION
 
 54
 For the foregoing reasons, we VACATE the convictions of Luis Sanchez on Counts 20-22 of the indictment, we VACATE the convictions of Juan Carlos Gonzalez on Counts 1-3 of the indictment, we VACATE the convictions of Raciel Rodriguez on Counts 17-19 of the indictment, and we VACATE the sentence of Tomas Morales and REMAND for resentencing in accordance with this opinion. We AFFIRM the district court in all other respects.
 
 
 
 [1]
 Jorge Hernandez pled guilty
 
 
 [2]
 Counts 1, 2, and 3 charged conspiracy to import marijuana (21 U.S.C. Secs. 952(a), 963); conspiracy to possess with intent to distribute marijuana (21 U.S.C. Secs. 841(a)(1), 846); and conspiracy to possess with intent to distribute marijuana on board vessels of the United States (21 U.S.C. Secs. 955a, 955c). All defendants were convicted of these counts
 Counts 4, 5, and 6 charged offenses related to use of the vessel "Bobby" in October 1985: possession with intent to distribute on board a United States vessel (21 U.S.C. Sec. 955a(a) & 18 U.S.C. Sec. 2); attempted importation (21 U.S.C. Secs. 952(a), 963 & 18 U.S.C. Sec. 2); and attempted possession with intent to distribute (21 U.S.C. Secs. 841(a)(1), 846 & 18 U.S.C. Sec. 2). Sanchez and Morales were convicted of these counts. Garcia was charged but acquitted on these counts.
 Counts 7, 8, and 9 charged crimes related to the first, but unsuccessful, use of the vessel "Ross and Bess" in October 1985: attempted possession with intent to distribute on board a United States vessel (21 U.S.C. Secs. 955a, 955c & 18 U.S.C. Sec. 2); attempted importation (21 U.S.C. Secs. 952(a), 963 & 18 U.S.C. Sec. 2); and attempted possession with intent to distribute (21 U.S.C. Secs. 841(a)(1), 846 & 18 U.S.C. Sec. 2). Sanchez, Rodriguez, Gonzalez, and Santos were convicted of these counts.
 Counts 10, 11, and 12 charged offenses in connection with a successful marijuana venture with the "Ross and Bess" in November 1985: possession with intent to distribute on board a United States vessel (21 U.S.C. Sec. 955a(a) & 18 U.S.C. Sec. 2); importation of marijuana (21 U.S.C. Sec. 952(a) & 18 U.S.C. Sec. 2); and possession with intent to distribute (21 U.S.C. Sec. 841(a)(1) & 18 U.S.C. Sec. 2). Sanchez, Rodriguez, Gonzalez, Garcia, and Santos were convicted of these counts.
 Counts 13, 14, and 15 charged crimes relating to an unsuccessful venture using the "Ross and Bess" in February 1986: attempted possession with intent to distribute on board a United States vessel (21 U.S.C. Secs. 955a(a), 955c & 18 U.S.C. Sec. 2); attempted importation (21 U.S.C. Secs. 952(a), 963 & 18 U.S.C. Sec. 2); and attempted possession with intent to distribute (21 U.S.C. Secs. 841(a)(1), 846 & 18 U.S.C. Sec. 2). Sanchez, Gonzalez, and Santos were convicted of these counts. Rodriguez was charged but acquitted of these counts.
 Count 16 charged attempted possession with intent to distribute on board a United States vessel (21 U.S.C. Secs. 955a(a), 955c & 18 U.S.C. Sec. 2) relating to an ill-fated venture involving the "Ross and Bess" in March 1986. Sanchez, Rodriguez, Gonzalez, and Santos were convicted of this count.
 Counts 17, 18, and 19 charged the same appellants as Count 16 with crimes relating to the use of the "Lady L": possession with intent to distribute on board a United States vessel (21 U.S.C. Sec. 955a(a) & 18 U.S.C. Sec. 2); attempted importation (21 U.S.C. Secs. 952(a), 963 & 18 U.S.C. Sec. 2); and attempted possession with intent to distribute (21 U.S.C. Secs. 841(a)(1), 846 & 18 U.S.C. Sec. 2). The "Ross and Bess" sank during the unsuccessful venture in March 1986, and the crew eventually ended up on the "Lady L," which then took part in another unsuccessful venture. All were convicted of these counts.
 Counts 20, 21, and 22 charged the same appellants, Sanchez, Rodriguez, Gonzalez, and Santos with crimes in connection with an unsuccessful importation using the vessel "Melissa" in October 1986: possession with intent to distribute on board a United States vessel (21 U.S.C. Sec. 955a(a) & 18 U.S.C. Sec. 2); attempted importation (21 U.S.C. Secs. 952(a), 963 & 18 U.S.C. Sec. 2); and attempted possession with intent to distribute (21 U.S.C. Secs. 841(a)(1), 846 & 18 U.S.C. Sec. 2). All were convicted of these counts.
 Counts 23 and 24 charged only Gonzalez with violation of 18 U.S.C. Sec. 1952 on March 17, 1986 and October 9, 1986, respectively. He was convicted of these counts.
 Counts 25, 26, and 27 charged Sanchez, Gonzalez, and Hernandez respectively, with engaging in a continuing criminal enterprise (21 U.S.C. Sec. 848). Both Sanchez and Gonzalez were convicted of these counts.
 
 
 [3]
 Defendants Sanchez, Santos, Morales, and Rodriguez argue that 21 U.S.C. Sec. 955a(a) (possession of marijuana with intent to distribute) and 21 U.S.C. Sec. 841(a)(1) (possession of marijuana with intent to distribute on board a United States vessel) prohibit the same conduct, such that their convictions for both offenses constitutes double jeopardy. This court has already considered and rejected this argument in United States v. Souder, 782 F.2d 1534, 1539 (11th Cir.1986)
 
 
 [4]
 The government conceded that Sanchez has the right to challenge the search of his home. Gonzalez also attempted to challenge the search, claiming that he was living in the house because he had separated from his wife a week before the search. The magistrate found that Gonzalez' testimony was not credible, that he failed to demonstrate that he was a resident of the house, and that he therefore could not challenge the search of the house. The district court conducted an independent review, then affirmed the magistrate's report and recommendation. The district court's findings of fact and credibility choices on a motion to suppress will only be overturned if clearly erroneous. United States v. Roy, 869 F.2d 1427, 1429 (11th Cir.), cert. denied, --- U.S. ----, 110 S.Ct. 72, 107 L.Ed.2d 38 (1989). The only evidence that Gonzalez resided at the house was his own testimony, and the government provided ample evidence tending to discredit Gonzalez' account. We cannot say that the magistrate's and district court's finding was clearly erroneous
 
 
 [5]
 Although Sanchez in his brief refers to "false and reckless statements," Brief of Sanchez at 48, he has produced no evidence that any of the statements in the affidavit were false in any respect. Indeed, he does not appear to be claiming that any statement in the affidavit was untrue, only that the overall effect could be misleading. Therefore, Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), and United States v. Kirk, 781 F.2d 1498 (11th Cir.1986), cited by Sanchez, which deal with challenges to the veracity of the affidavit, are inapplicable to this case
 
 
 [6]
 The affidavit showed that: (1) a known large-scale drug trafficker, Ugalde, was looking for "something" from appellant Sanchez at a time when he was searching for drugs; (2) in a cryptic conversation about Ugalde getting "something" from Sanchez, Ugalde and Sanchez consciously avoided naming the subject of their conversation, but they clearly understood each other; (3) this conversation indicated Sanchez and Ugalde had had dealings of this type in the past; (4) Sanchez intended to do business with Ugalde at Sanchez' house; (5) Sanchez had a very large amount of cash in his house in banded stacks in a box; (6) when Ugalde learned of this money, he was not surprised and suggested stealing some of it because it was unlikely to be missed
 
 
 [7]
 Sanchez also asserts standing to challenge the search of the locked briefcase because it was in his home and therefore in his possession. However, Sanchez' acknowledgement to the district court, through his attorney, that the briefcase did not belong to him removes any legitimate expectation of privacy which might otherwise have been accorded to him. See United States v. McBean, 861 F.2d 1570, 1574 (11th Cir.1988). Moreover, by explicitly stating to the district court that he was not objecting to the introduction of the briefcase, Sanchez waived his right to raise the issue here. United States v. Valdes, 876 F.2d 1554, 1558 n. 10 (11th Cir.1989)
 
 
 [8]
 To challenge a search or seizure as violative of the fourth amendment, a criminal defendant must show that he has a legitimate expectation of privacy in the property searched or seized. Rakas v. Illinois, 439 U.S. 128, 143, 99 S.Ct. 421, 430, 58 L.Ed.2d 387 (1978)
 
 
 [9]
 Decisions of the former Fifth Circuit, Unit B, are binding precedent in this circuit. Stein v. Reynolds Securities, 667 F.2d 33, 34 (11th Cir.1982)
 
 
 [10]
 Fed.R.Evid. 404(b) states:
 (b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
 
 
 [11]
 Appellant Garcia specifically adopted the argument of Sanchez on this issue. Appellant Morales adopted all favorable points made by other appellants
 
 
 [12]
 Prior to trial the government filed a notice of intent to offer evidence pursuant to Fed.R.Evid. 404(b). Appellants argue for the first time on appeal that this notice was insufficient because it did not state a valid purpose. We decline to address this issue as it was not raised in the district court. United States v. Hosford, 782 F.2d 936, 938 n. 1 (11th Cir.), cert. denied, 476 U.S. 1118, 106 S.Ct. 1977, 90 L.Ed.2d 660 (1986)
 
 
 [13]
 The government argues that we should review this evidence under the plain error standard because appellants Sanchez and Garcia did not object at trial to this evidence based on Rule 404(b), but only on hearsay and relevancy grounds. The government also states that the rule regarding objections in this case was that each defendant had to object individually. We believe appellants' objections and argument on this evidence was sufficiently clear to apprise the district court and opposing counsel that appellants objected on the basis of Rules 403, 404(b), hearsay, and relevancy. We note that part of the test for determining the admissibility of evidence under Rule 404(b) is its relevancy to an issue other than the defendant's character. Moreover, the record shows that appellants are clearly correct that the rule at trial in this case was that any objection by one defendant was presumed to be joined in by all defendants unless they specifically exempted themselves from that objection. (R8:67; R15:1101-02). There was no requirement that each defendant make his own objection
 
 
 [14]
 Decisions of the former Fifth Circuit handed down before October 1, 1981 are binding precedent in this circuit. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc)
 
 
 [15]
 Fed.R.Evid. 403 states:
 Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.
 
 
 [16]
 The indictment charged defendants with violation of three conspiracy statutes. See supra note 2. Each of these statutes addresses a different criminal objective and may be punished separately. See Albernaz v. United States, 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981). However, as the evidence shows that these violations arose out of only one general conspiratorial agreement, we will treat them as one general conspiracy for the purposes of this analysis
 
 
 [17]
 Appellant Santos further argues that the evidence at trial shows that more conspiracies existed than were charged in the indictment, and that the evidence did not show that Santos participated or was even aware of the separate conspiracies. As appellants neither requested nor received jury instructions on the issue of whether single or multiple conspiracies existed, we will reverse only on a showing of plain error. United States v. Meester, 762 F.2d 867, 880 (11th Cir.), cert. denied, 474 U.S. 1024, 106 S.Ct. 579, 88 L.Ed.2d 562 (1985). Because we find the jury could reasonably find single conspiracies, with Sanchez and Gonzalez as "key men," we find no variance between the number of conspiracies charged in the indictment and the evidence produced at trial. United States v. Stitzer, 785 F.2d 1506, 1518 (11th Cir.), cert. denied, 479 U.S. 823, 107 S.Ct. 93, 93 L.Ed.2d 44 (1986)
 
 
 [18]
 The government claims that Sanchez did not object at trial to one piece of this evidence, GX 88, and that his objection to the other, GX 90, was based on grounds other than Rule 404(b). Upon review of the record, we conclude that there was a proper objection to GX 88 (R15:1193), and that the objection and argument made by appellant at trial is consistent with his position before this court (R15:1126-53)
 
 
 [19]
 Both Garcia and Morales claim they renewed their motions at the close of all evidence. However, the record shows that only Rodriguez renewed his motion at the close of all evidence. While the record indicates that the procedure for objections at trial was that one defendant's objection stood for all, see supra note 11, we can find no evidence in the record of an agreement that motions would also be registered jointly. Indeed, in this case, each separate defendant made a motion for judgment of acquittal at the close of the government's case
 
 
 [20]
 Generally, an appellant may not assert theories on appeal that were not raised at trial or preserved by a timely objection. United States v. Hosford, 782 F.2d 936, 938 n. 1 (11th Cir.), cert. denied, 476 U.S. 1118, 106 S.Ct. 1977, 90 L.Ed.2d 660 (1986). Although in his brief Garcia states that he moved for severance at various times during the course of the trial, he fails to cite to the record in support of this contention and we have been unable to locate any formal motion pursuant to Fed.R.Crim.P. 14 in the record. Counsel did, however, frequently comment during trial that much of the evidence went only to the other defendants and that he felt this prejudiced his client. We therefore choose to address this claim
 
 
 [21]
 The district court has already vacated the conspiracy convictions of Luis Sanchez for this reason
 
 
 [22]
 We reject, however, Gonzalez' argument that the trial court's denial of his attorney's motion to withdraw violated Gonzalez' sixth amendment right to effective assistance of counsel because his attorney had a conflict of interest and because he and his attorney were embroiled in an irreconcilable conflict. We see no abuse of discretion by the trial court in refusing to grant such a motion so close to the time of trial
 
 
 [23]
 Appellant Rodriguez raises three other issues which we reject as meritless:
 (1) whether the trial court's failure to make a finding with respect to a controverted fact contained in the defendant's presentence investigation report necessitates a remand for resentencing;
 (2) whether the trial court's limitations on and comments during the defendant's opening statements denied him a fair trial;
 (3) whether the prosecutor's statements during closing argument which vouched for the veracity of the government's witnesses, had an unduly prejudicial effect upon the jury and constituted reversible error.