[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 03-11199 & 03-16083

_____

D. C. Docket No. 01-06095-CR-JAG

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
July 08, 2005
THOMAS K. KAHN
CLERK

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

WILBERT McKREITH,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

**(July 8, 2005)**

Before BIRCH, CARNES and RONEY, Circuit Judges.

PER CURIAM:

Wilbert McKreith appeals the jury convictions on seven counts of bank robbery, 18 U.S.C. § 2113(a), and three counts of using, carrying, and brandishing a firearm in relation to crimes of violence, 18 U.S.C. § 924(c)(1)(A) and (C), and

the district court bench trial convictions on two counts of knowingly possessing firearms, having been previously convicted of a felony, 18 U.S.C. § 922(g)(1). McKreith argues insufficiency of the evidence, improper admission of evidence, other trial errors, and being sentenced without counsel in violation of the Constitution. We affirm both the convictions and the sentence. After a recitation of the rather complex facts in this case, construing the trial evidence in the light most favorable to the jury verdict, we address each issue as quoted directly from McKreith's appellate brief.

Eight federally-insured banks located in south Florida were robbed between January 20, 2000 and March 1, 2001. All of the robberies contained a similar pattern. The banks were robbed by a "light-skinned black person" wearing a plaid shirt and ski mask. The robber demanded, sometimes brandishing a gun, that the bank tellers place the money in a duffel bag the robber had carried into the bank with him. Several witnesses from these bank locations testified that the robber drove a maroon, burgundy or red-colored car. The banks utilized security and surveillance cameras, which captured images of these robberies.

Based on his investigation, Federal Bureau of Investigation Agent James Lewis developed a composite description of the robbery suspect and asked local south Florida police to "be on the lookout" for, among other things, a red or

2

burgundy four-door Mercedes Benz with tinted windows. A local police officer contacted Agent Lewis when he identified a vehicle fitting that description. That vehicle was registered to McKreith.

Agent Lewis obtained surveillance pictures of the robberies and showed them to Ms. Kelly Morris, a federal employee who had known McKreith for the previous year and a half and had visited with McKreith at his residence. Morris told Agent Lewis that the person in the picture had a similar stature (*i.e.*, "the stomach sticking out"), height, and profile as McKreith. She also noted that, like the person shown in the banks' surveillance images, she had observed McKreith previously wearing two wrist watches. She further noticed that the person depicted in the surveillance pictures was wearing similar clothes that she had noticed McKreith wearing in the past. Ms. Morris testified, "He always wore the same type of clothing, plaid shirts, T-shirts, black jeans and double watches." She had also observed McKreith's maroon Mercedes parked outside his residence when she had visited him. Morris ultimately identified the person in the surveillance pictures as McKreith.

The FBI placed McKreith under surveillance and followed him to a residence at 1540 N.W. 69th Terrace in Miami. McKreith's tax records listed that address as his residence. After receiving federal search warrants for both

3

McKreith's Mercedes and that residence, Agents Tye Sager and Lewis executed the warrants on April 11, 2001. They searched for items connected to McKreith's suspected bank robberies. The search revealed, among other things, "a flannel or plaid type shirt," two black ski masks, and "a vinyl black semi-striped bag." A safe was also discovered in the master bedroom closet. It contained a .380-caliber handgun, several boxes of varying ammunition, and three wrist watches. McKreith was arrested at the residence and taken to an FBI field office. A search of McKreith's Mercedes discovered a bag similar to the bag used in one of the robberies, photographs of McKreith depicting him simultaneously wearing two watches, and a settlement statement for McKreith's purchase of the 1540 N.W. 69th Terrace residence.

The plaid shirt, manufactured by "Van Huessen," seized from the residence was sent to an FBI crime lab and was analyzed by forensic analyst Richard Vorder Bruegge. Mr. Vorder Bruegge analyzed the shirt, along with various videotapes and photographs, to determine if that shirt and other articles he was given matched the articles worn by the robber in the surveillance images. Vorder Bruegge testified that "[a]ll of the characteristics of this shirt matched the class characteristics of the shirt worn by the bank robber in those cases that we could see the shirt," which was seven of the eight robberies captured by surveillance images.

Vorder Bruegge also testified that the black bag seized from McKreith's residence was "indistinguishable" from the bag seen in the photos at one of the bank robberies. He further testified that by examining the bank surveillance images, he was able to identify that "there are similarities" between McKreith and the person depicted in those images, including "the shape of the nose, mouth and chin."

McKreith moved for Fed. R. Crim. P. 12 judgments of acquittal at the close of the government's case-in-chief, which was denied. McKreith rested without presenting a case-in-chief. After a six-day trial, the jury returned a guilty verdict on counts two through seven, which included seven of the eight counts of bank robbery, 18 U.S.C. § 2113(a), charged in the superceding indictment, and three of the four counts of using, carrying, and brandishing a firearm in relation to crimes of violence, 18 U.S.C. § 924(c)(1)(A) and (C). A bench trial was then held on the two felon-in-possession of a firearm counts (counts 13 and 14). The district court found McKreith guilty of both counts of knowingly possessing firearms, having been previously convicted of a felony, 18 U.S.C. § 922(g)(1). He was sentenced to an aggregate of 1,110 months' imprisonment.

> **Argument 1. "The Evidence presented was insufficient to establish beyond a reasonable doubt that Wilbert McKreith was the culprit; absent the unconstitutionally obtained and impermissibly allowed evidence, the government failed to present a prima facie case of guilt in this 'all or nothing' prosecution."**

There is sufficient evidence to support the jury's guilty verdict. Numerous witnesses identified, among other things, McKreith's maroon Mercedes car, plaid shirt, simultaneously wearing two wrist watches, ski masks, and duffle bag from the scenes of the robberies. These witnesses were thoroughly cross-examined by McKreith's trial counsel, attempting to uncover inconsistencies.

The banks' surveillance footage were also thoroughly analyzed. The evidence seized pursuant to the lawfully obtained and executed federal search warrant at McKreith's residence corroborated the testimony of the various eyewitnesses of the robberies. A forensic expert testified that the shirt seized from McKreith's residence matched the shirt seen in several of the bank surveillance images. A reasonable trier of fact could have found that the evidence established McKreith guilty beyond a reasonable doubt. *See United States v. Calderon*, 127 F.3d 1314, 1324 (11th Cir. 1997) (noting that this Court is to affirm jury convictions "provided that a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt").

**Argument 2. "The government improperly obtained statements from the defendant warranting a new trial."**

McKreith argues that because the agents had asked him for the combination to the safe after he had invoked his *Miranda* rights, the contents of the safe should have been suppressed as illegal fruits of the search. The government did not

6

present to the jury any of McKreith's post-*Miranda* statements concerning his providing the combination to the safe found in his residence. The government only presented to the jury the items that were found in the safe, not that McKreith had told them the combination of the safe. The search warrant provided for the search of the house and its contents. Because the safe was located in the house, the agents were free to search it. The government merely avoided breaking the safe open by asking McKreith for its combination. *See United States v. Martinez*, 949 F.2d 1117, 1120 (11th Cir. 1992) (noting that "a warrant to search a specific area for a certain class of things authorizes government agents to break open locked containers which may contain the objects of the search"). There is no reversible error on this ground.

> **Argument 3. "The defendant met his burden establishing that the affidavits in support of the search warrants contained false statements which were knowingly made in order to secure the issuance of the warrants."**

McKreith did not meet his burden establishing that the affidavits in support of the search warrant contained reckless or intentional misrepresentations or omissions. After a full evidentiary hearing on McKreith's motion to suppress, the magistrate judge issued a thorough report and recommendation, which was adopted by the district court, indicating that the allegations made by Agent Lewis in his application for search warrant "were neither false nor misleading." There is no

7

clear error in this finding.  *See United States v. Jenkins*, 901 F.2d 1075, 1079 (11th

Cir. 1990).  Furthermore, there was no error in denying a hearing pursuant to

*Franks v. Delaware*, 438 U.S. 154 (1978).  *See Jenkins*, 901 F.2d at 1080-81

(affirming the district court's refusal to hold a *Franks* hearing; and noting that a

*Franks* hearing is only required when defendant proves knowing or reckless

representation).

> **Argument 4.  "The 'good faith' exception does not apply to warrants based upon factually inaccurate or false information intentionally supplied by the affiant in order to procure the issuance of a search warrant."**

The magistrate judge further ruled that even if Agent Lewis had provided

inaccurate information, "it would have been no different in terms of my finding of

probable cause to issue the warrant[s]."  Since the record supports the finding that

the allegations made by Agent Lewis in his application for search warrant "were

neither false nor misleading," the "good faith" exception does not come into play

and therefore, there was no reversible error on this issue.

> **Argument 5.  "The district court reversibly erred by allowing improper expert testimony."**

The district court did not abuse its discretion by admitting the testimony of

government forensic expert Richard Vorder Bruegge.  The court conducted a

*Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993) hearing, where

8

McKreith had the opportunity to *voir dire* and, during his testimony, cross-examine Vorder Bruegge as to his scientific techniques and conclusions, including the commonality of the shirt seized in McKreith's residence with the shirts depicted in the banks' surveillance images. The jury was free to accept or reject Vorder Bruegge's testimony. Alternatively, any error in admitting Vorder Bruegge's testimony was harmless in light of the overwhelming evidence of eyewitness identifications of McKreith's Mercedes, clothing, and duffle bag at the banks, his identification by Kelly Morris, as well as the evidence seized from McKreith's residence and car.

**Argument 6. "The district court reversibly erred by convicting William McKreith on Counts 13 and 14 of the superceding indictment."**

The district court did not err by adjudicating McKreith guilty of the two charged felon-in-possession of a firearm counts (counts 13 and 14) after a bench trial. McKreith filed a motion to sever these two charges from the jury trial and requested that they be tried in a bench trial due to his fear that the jury would be "prejudiced" by learning that he was a convicted felon. The district court granted McKreith's motion to sever. In so doing, McKreith thus waived his right to a jury trial on these counts and consented to a bench trial.

McKreith also stipulated that the firearms were manufactured outside the state of Florida, which he now, on appeal, contends the government failed to prove. A review of the transcript reveals the following stipulation from McKreith's counsel, "The guns were not manufactured in the State of Florida." The district court accepted the stipulation of the parties, "So the record may be clear, the Court will accept the stipulation of the parties with respect to, A, the fact that the firearms were not manufactured in the State of Florida; B, that the defendant indeed is a convicted felon; and C, that . . . they are firearms." This stipulation was sufficient to meet the government's burden of establishing the elements of the felon-in-possession of a firearm charges, 18 U.S.C. § 924(g)(1). *See United States v. Hardin*, 139 F.3d 813, 816-17 (11th Cir. 1998) (upholding felon in possession of firearm jury conviction where defense attorney stipulated to "essential element" offense).

**Argument 7: "The district court reversibly erred by allowing evidence of bank fraud during this bank robbery trial."**

McKreith argues that the district court erred by permitting Ronald Amira, the owner of "Amira Homes" who had sold three homes to McKreith in approximately 2000, to testify that McKreith had a "propensity for concealing facts." At trial, the government asked Amira whether he had knowledge of whether McKreith had been employed by Amira Homes or Pool and Patio King

10

Service, Amira's brother's company, which were listed as "job references" on McKreith's mortgage applications that were used to secure mortgages for the homes McKreith had purchased from Amira. Amira testified that McKreith had not been employed by those two companies earning a monthly income of $3,300 as was listed on McKreith's mortgage loan application. Amira further testified that he had recalled McKreith: (1) pulling $1,000 in cash from his pocket to pay a deposit on one of the homes and (2) driving a burgundy Mercedes.

First, because McKreith did not object to Amira's testimony at trial, we review this claim for plain error. *See United States v. Puche*, 350 F.3d 1137, 1151 (11th Cir. 2003). Next, there was no error, plain or otherwise, because the evidence was offered by the government to establish McKreith's lack of legitimate sources of income and unexplained sudden wealth and expenditures during the time periods of the charged bank robberies, which was a recurring theme of the government's case. It was not offered to show McKreith's criminal propensity to commit "bank fraud," as he argues here. *See United States v. Gonzalez*, 940 F.2d 1413, 1423 (11th Cir. 1991) (rejecting defendant's Rule 404(b) argument, and finding no abuse of discretion in district court's admission of loan application and health insurance form to show false employment history, noting, "evidence of appellant's apparent attempt to conceal the true source of his sudden wealth by

11

falsely listing a source that appeared to be legitimate is relevant to negate any legitimate source for these funds, and is not unfairly prejudicial").

**Argument 8. "The district court reversibly erred by forcing Wilbert McKreith to be sentenced without counsel in violation of his constitutional rights."**

The transcripts reveal that McKreith knowingly elected to proceed *pro se* during sentencing, despite the district court's thorough explanation of "the dangers of proceeding" without an attorney as required by *Farretta v. California*, 422 U.S. 806 (1975). Despite the district court's caution, McKreith expressly chose to proceed without his lawyer, John Howes, requesting in a motion filed with the district court that Howes be discharged and that he be permitted to represent "himself." *See United States v. Kimball*, 291 F.3d 726, 730-31 (11th Cir. 2002) (explaining requirements for defendant to proceed *pro se* under *Farretta*). At a hearing on McKreith's motion to discharge Attorney Howes and to proceed *pro se*, the district court noted:

> I would remind you that the record in this case will reflect that in this room after closing arguments, while the jury was deliberating, you advised the Court that you were very happy with the way Mr. Howes had represented you in connection with this case. And I was certainly pleased to hear that, because it was my opinion, which I think I stated at the time, that I certainly agreed with you and I thought he had done an excellent job in representing you, considering the weight of the evidence the government had against you. The Court finds that it has previously

12

> explained at great length to this defendant at the time of the Faretta hearing . . . of the perils of proceeding *pro se* in connection with a criminal case. However, since he certainly has every right in the world to represent himself, and since he is no longer satisfied with his counsel, the defendant Wilbert McKreith's motion to withdraw counsel and to proceed to represent himself will be granted, and Mr. McKreith can proceed to represent himself *pro se* in this matter.

McKreith has not identified, nor has this Court found, any authority requiring a reversal under the facts and circumstances of this case. There was no error, constitutional or otherwise, by the district court granting McKreith's motion to fire his attorney and to proceed *pro se.*

AFFIRMED.