UNITED STATES of America,
Plaintiff-Appellee,

v.

Rodney HOSFORD,
Defendant-Appellant.

No. 85–3036.

United States Court of Appeals,
Eleventh Circuit.

Feb. 19, 1986.

from asserting their non-unanimous jury verdict claim.

Hal A. Davis, Quincy, Fla., Jack F. White, Jr., James G. Mahorner, Tallahassee, Fla., Jack A. Harnett, Quincy, Fla., for defendant-appellant.

Kenneth Sukhia, David L. McGee, Asst. U.S. Attys., Tallahassee, Fla., for plaintiff-appellee.

Before HILL, Circuit Judge, TUTTLE and HENDERSON\*, Senior Circuit Judges.

\* *See* Rule 3(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

**PER CURIAM:**

In May, 1983, the defendant-appellant, Rodney C. Hosford, entered into a use immunity agreement with the United States Customs Service. At that time he admitted to prior criminal acts, including the acquisition of fraudulent passports. The agreement required Hosford to cooperate with the government and to inform the Customs Service whenever he became aware of any illegal activity. Subsequently, in October, 1983, the Customs Service was investigating Hosford for his alleged involvement in a plan to prepare and acquire fraudulent passports. During the course of the investigation the government recorded conversations between Hosford and a cooperating witness, James Herring. In these conversations Hosford sought Herring's aid in helping to murder three men. He provided Herring and a special government agent posing as a "hit man" with photographs of the men, and specified the amount of money to be paid for each murder. He also stated that he had hired another killer earlier to accomplish the same purpose, but that the individual subsequently turned down the proposition. At no time did Hosford inform the government about the proposed murders. He was arrested and tried in the United States District Court for the Northern District of Florida for soliciting and attempting murder.

During his trial, Hosford maintained that he was aware Herring was a government agent and that his actions therefore conformed with his immunity agreement to cooperate with the government. Hosford also contended that he had encouraged the murder plots to aid the government in what he perceived to be its goal of gathering evidence against those persons who had ordered the killings. Hosford was found guilty of two counts of violating the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–68, for soliciting and attempting murder. He appeals that conviction, asserting eleven errors of law.

 Hosford first claims that Herring's testimony was unfairly obtained because the cooperating witness testified pursuant to an improper use immunity agreement. This immunity agreement provided that Herring would cooperate with the government and that the United States would not use any of Herring's statements against him so long as he told the truth. At some time after Herring entered into this contract the government agreed to expedite the release of a boat owned by Herring that was subject to a civil seizure claim. According to Hosford, this accommodation constituted an impermissible purchase of testimony. The government's use of paid informants does have limits. *United States v. Richardson,* 764 F.2d 1514, 1520 (11th Cir.1985). In this case, however, the release of Herring's boat was keyed to Herring's cooperation with the government, not his testimony against Hosford. The government clearly did not abuse its discretion in granting Herring a use immunity agreement whose terms were designed to inspire truthful testimony. *See id.*

 As a second error, Hosford contends that the government selected David McGee as lead prosecutor because McGee previously had participated in the creation and execution of Hosford's use immunity agreement. Since the agreement was the keystone to Hosford's defense, he reasons that it was inevitable that the jury, through testimony by witnesses and the defendant, would become aware of McGee's involvement. These revelations, which did occur at trial, in Hosford's view clothed McGee with de facto witness status and accorded him "witness verity" with the jury, thereby violating Hosford's due process rights.[1] The government points out that McGee did

not testify at the trial, that it easily proved the terms of the agreement without McGee's testimony, and that McGee made no attempt indirectly to testify about his knowledge or insinuate any special awareness of the agreement.

 It is clear that a prosecutor must not act as both prosecutor and witness. *See United States v. Johnston,* 690 F.2d 638, 642–43 (7th Cir.1982). This is a part of the general "advocate-witness" rule that counsel should avoid appearing as both advocate and witness except under extraordinary circumstances. *See United States v. Crockett,* 506 F.2d 759, 760 (5th Cir.), *cert. denied,* 423 U.S. 824, 96 S.Ct. 37, 46 L.Ed.2d 40 (1975).[2] On the other hand, mere first-hand knowledge of facts that will be proved at trial is not a per se bar to representation. The issue before us falls between these two parameters. While McGee did not formally appear as a witness, he had more than mere knowledge of facts that would emerge at trial since his involvement in Hosford's immunity agreement was revealed to the jury by several witnesses.

The policy concerns that preclude a prosecutor from also appearing as a witness were well stated by the United States Court of Appeals for the Seventh Circuit:

First, the rule eliminates the risk that a testifying prosecutor will not be a fully objective witness given his position as an advocate for the government. Second, there is fear that the prestige or prominence of a government prosecutor's office will artificially enhance his credibility as a witness. Third, the performance of dual roles by a prosecutor might create confusion on the part of the trier of fact as to whether the prosecutor is

1. As a threshold matter, we note that Hosford did not make this objection in the district court. As a general rule, an appellant may not assert theories on appeal that were not pursued at trial or preserved by means of a timely objection. *See Lumpkin v. Ricketts,* 551 F.2d 680 (5th Cir. 1977), *cert. denied,* 434 U.S. 957, 98 S.Ct. 483, 54 L.Ed.2d 316 (1977). However, on the facts of this case and since this issue is a question of law, we address it. Our decision is "one left primarily to the discretion of the courts of ap-

peals, to be exercised on the facts of the individual cases." *Singleton v. Wulff,* 428 U.S. 106, 121, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826, 837 (1976).

2. In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc), this court adopted as precedent all decisions of the former Fifth Circuit Court of Appeals decided prior to October 1, 1981.

speaking in the capacity of an advocate or of a witness, thus raising the possibility of the trier according testimonial credit to the prosecutor's closing argument. Fourth, the rule reflects a broader concern for public confidence in the administration of justice, and implements the maxim that "justice must satisfy the appearance of justice." This concern is especially significant where the testifying attorney represents the prosecuting arm of the federal government. (footnote omitted).

*United States v. Johnston,* 690 F.2d 638, 643 (7th Cir.1982).

■■■ These considerations apply equally when a prosecutor implicitly testifies to personal knowledge or otherwise attains "witness verity" in a case in which he appears as an advocate for the government. Thus, it would be improper for a government attorney who has independent personal knowledge about facts that will be controverted at the trial to act as prosecutor (1) if he uses that inside information to testify indirectly by implying to the jury that he has special knowledge or insight, or (2) if he is selected as prosecutor when it is obvious he is the sole witness whose testimony is necessary to establish essential facts otherwise not ascertainable.[3] *See, e.g., id.* at 642–43.

■■■ In this case, McGee's selection as prosecutor did not rise to the level of reversible error. The record discloses that all references to McGee's participation were made in passing and without emphasizing his involvement. The contract was written and witnessed by several other persons, and introduced into evidence by Hosford. Moreover, McGee at no point implied that he was privy to special knowledge about the agreement or that any witness had misrepresented its terms. It also is significant that neither side indicated the need or desire to call McGee as a witness and Hosford did not object to McGee's assignment or conduct. While the dual role of prosecutor and quasi-witness is subject to strictest scrutiny, under these circumstances McGee's appearance and conduct in this case did not violate Hosford's right to due process.[4]

■■■ Hosford next argues that the district court erred by admitting evidence of several prior bad acts unrelated to the crime for which he was charged. He alleges that these bad acts were not admissible under Rule 404(b) of the Federal Rules of Evidence, that they were not relevant to the issues in his case, *see* Fed.R.Evid. 401, and that whatever relevance they might have had was outweighed by their prejudice. *See* Fed.R.Evid. 403. We do not reach the merits of this issue because even assuming that the district court abused its discretion in admitting this evidence, *see United States v. Kerris,* 748 F.2d 610, 615 (11th Cir.1984), it was at most harmless error. *See* Fed.R.Civ.P. 61; *Tugwell v. A.F. Klaveness & Co.,* 320 F.2d 866, 868–69 (5th Cir.1963), *cert. denied,* 376 U.S. 951, 84 S.Ct. 967, 11 L.Ed.2d 970 (1964).

The evidence against Hosford was overwhelming. It included several tapes of conversations between Hosford and government agents, as well as the testimony of the agents, all of which clearly inculpated him in the murder plot. *See* Trial Transcript Vol. 5 at 4, 20–46, 66–75, 82, 84–85, 88, 96; Vol. 6 at 3–4, 10–14, 17–27, 29–36, 46–50; Vol. 7 at 5–12; Vol. 10 at 3–32. In addition, the man Hosford originally contracted with testified that Hosford had agreed to pay him $35,000.00 to kill one of the target victims. *Id.,* Vol. 8 at 13–27. Other witnesses confirmed that the motive for the murders was to recoup insurance proceeds. *Id.,* Vol. 13 at 2–10; Vol. 14 at 2–8; Vol. 15 at 2–6; Vol. 16 at 4–19; Vol. 17 at 12–13; Vol. 18 at 3–4. The

---

3. The trial court, of course, may dispose of the second factor by refusing to permit the prosecutor to testify, a matter within the court's sound discretion. *See United States v. Bates,* 600 F.2d 505, 511 (5th Cir.1979).

4. We emphasize the narrowness of our holding. The resolution of this issue depends on the peculiar facts of each case. Other similar cases arising out of different circumstances might constitute reversible error.

evidence clearly demonstrates beyond a reasonable doubt that Hosford solicited murder and took the additional step necessary for attempted murder—the two crimes for which he was convicted.

In summary, the evidence of guilt was of such magnitude that even if the prior bad acts testimony was improvidently admitted, the error did not "affect the substantial rights of the parties." Fed.R.Civ.P. 61; *see Securities Exchange Commission v. Chenery Corp.*, 318 U.S. 80, 88, 63 S.Ct. 454, 459, 87 L.Ed. 626, 633 (1943).

We have considered the remaining assignments of error along with the voluminous record in this case and the relevant case law pertaining thereto. We conclude that they are without merit and warrant no further discussion.

The judgment of the conviction is AFFIRMED.