[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 05-16590
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUG 16, 2006
THOMAS K. KAHN
CLERK

D. C. Docket No. 05-00187-CR-2-SLB-HGD

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MEENYA TANESH THOMAS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(August 16, 2006)**

Before MARCUS, WILSON and FAY, Circuit Judges.

PER CURIAM:

Meenya Tanesh Thomas appeals her 21-month concurrent sentences, imposed after a jury convicted her of two counts of committing perjury before a grand jury, both violations of 18 U.S.C. § 1623(a). On appeal, she argues that the district court erred by (1) denying her motion to suppress statements made to police; (2) her motion to disqualify the prosecuting attorney; and (3) applying a two-level sentencing enhancement for obstruction of justice. For the reasons set forth more fully below, we affirm.

Prior to trial, Thomas filed a motion to have the prosecutor withdraw himself from the case because Thomas intended to call him as a witness. The government opposed the motion, and described in detail the robbery that triggered the grand jury testimony at issue in this case. Thomas, according to the government, was the girlfriend of one of the suspects in the robbery, Xavier Perkins, and when interviewed by police, she said that Perkins had told her that he had robbed a CVS Pharmacy and gotten into a shootout with police. When she testified before the grand jury, however, Thomas denied making the statement to police and claimed that she fabricated a second, written statement because Detective Eddie Morrissette had threatened her. The government opposed Thomas's motion because Thomas had failed to demonstrate a compelling need to call the prosecutor as a witness.

Thomas responded by arguing that she intended to call the prosecutor as a

2

witness, and, therefore, it was improper for him to simultaneously prosecute the case in which he was going to testify. She argued that it was unfair for the prosecutor's credibility to be gauged by the jury based upon his presentation of the case (voir dire, opening statement, examination of witnesses) prior to giving his own testimony. Next, Thomas argued that she did not have to show a compelling need for the prosecutor to be called as a witness because she should not be placed in a position where she would have to disclose trial strategy. In addition, she argued that her Sixth Amendment interests in obtaining witnesses outweighed any interest Simpson had in avoiding testifying.

The district court denied the motion after finding that Thomas failed to demonstrate any compelling need to call the prosecutor as a witness. Thomas filed a motion for reconsideration of the court's order and argued that she had a compelling need to call Simpson because he was the only witness, other than Thomas herself, to her testimony before the grand jury. She further argued that the grand jury transcript of her testimony was not a substitute for the prosecutor's testimony, which would better capture the overall veracity of Thomas's grand jury testimony. Lastly, she argued that the district court's refusal to call the prosecutor as a witness would deny her Sixth Amendment right to confront the only witness with first-hand knowledge of her testimony. That motion was denied. At a later

3

hearing, Thomas was given an opportunity to clarify her compelling need for the prosecutor to be called as a witness, and she stated that the grand jury transcript "can't capture the body language, the dynamics, of what was said and how it was said. Only a live witness can convey that to this court." The district court found no compelling need.

The morning of the trial, Thomas filed a motion in limine that was converted to a Miranda[1] hearing to determine whether Thomas was in custody when she gave statements to the police. Thomas called Detective Eddie Morrissette, who spoke to Thomas and her mother regarding a CVS robbery. Thomas was in plain clothes, but had his badge and firearm showing. Morrissette first spoke with Thomas's mother, Lorene, because Thomas was not present at her home when Morrissette arrived. Thomas later arrived, and Morrissette began questioning her. Morrissette observed that, at the time, Thomas was handcuffed but not arrested. After Thomas had identified herself, however, Morrissette unhandcuffed her "within moments." Morrissette questioned Thomas and explained to her that, if in fact she had picked up the men from the scene of the robbery, she could get in trouble because it was against the law. However, Morrissette never told Thomas that she was facing any charges. Morrissette then asked Thomas if she would accompany him to the police

---

[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

department, and Thomas replied that she would. Morrissette asked Thomas's mother if she could pick Thomas up, and she agreed. Thomas was not placed in handcuffs, and, in fact, sat in the front seat of the police cruiser and used her cell phone.

Once at the police department, Thomas gave a formal statement to an officer other than Morrissette. At no point was Thomas ever placed under arrest, and she was at the police department just over an hour while giving her statement. Morrissette further testified that he never told Thomas that she had to come with him and Thomas never expressed any reluctance to talk to him or a desire to leave.

Next, Thomas called her mother, Lorene. She testified that, on January 7, she was at home with her granddaughter when a "team of police" knocked on her door. The police rushed them out of the house and she was eventually approached by Morrissette. While she was talking to Morrissette, Thomas drove up and Morrissette asked Thomas if she knew where Perkins was before walking off with her. Thomas was not handcuffed. Some time later, Morrissette told Lorene that he was taking Thomas "downtown" for questioning, but did not indicate that Thomas was under arrest. Lorene, however, was under the impression that Thomas was under arrest because of "the way [Morrissette] turned around and said he was going to take her downtown, the way he was talking to her and everything,

5

motioning his hands and everything." In Lorene's opinion, Thomas was not leaving of her own volition.

Morrissette was re-called by the court, and he clarified that, while at Thomas's home, he spoke with Thomas for approximately 30 minutes, but at no time placed her or told her that she was under arrest. When asked if she would go with Morrissette to the police station, Thomas showed no reluctance and made no statement indicating that she would rather not go.

The court then denied the motion to suppress, first finding that the 30-minute investigative detention was not unreasonable and that Thomas was not under arrest either at her home or when she went to the police station. It further found that, under the totality of the circumstances, a reasonable person in Thomas's situation "would not have believed that she was not free to go."

At trial, the government called as witnesses both Keith Kennedy, the court reporter of Thomas's grand jury testimony, and FBI Agent Greg Gauger, who also was present during Thomas's grand jury testimony. The only reference made to the prosecutor's participation in the grand jury proceeding was made by Kennedy, who identified the transcript as "the testimony of Meenya Thomas on March 30, 2005, conducted by yourself." The government read the transcript of Thomas's grand jury testimony, during which she was informed that she had an obligation to

tell the truth and her failure to do so could lead to a perjury charge that carried a five-year maximum term of imprisonment for each lie. During her testimony, Thomas stated that she was called by her boyfriend, Perkins, and another man, both of whom asked her to come pick them up near a CVS in Hoover, Alabama. She denied that either man told her that they had been involved in a robbery and a shooting. The prosecutor then asked Thomas if she remembered giving a statement to police indicating that the men she picked up described a shooting. Thomas denied making the statement. Thomas was reminded that she was under oath and subject to perjury, and then he showed her the statement with her signature on it and asked her if she wrote the statement. Thomas admitted to writing the statement, but then claimed that she had "made it up." Thomas's written statement also indicated that the two men told her that they had "held up CVS." Thomas denied that the men said that to her, at which point Thomas was again warned that every lie to the grand jury could cost her five years in prison. Thomas admitted writing the statement, but again said that it had been made up, and the police, specifically Detective Morrissette, had threatened her. Additionally, the government introduced into evidence Morrissette's testimony regarding Thomas's oral statement, the actual written statement provided by Thomas at the police station, and a videotape of the interview at the police station,

7

conducted by Detective Laura Brignac. Thomas also testified in her own defense and asserted, as she did to the grand jury, that she made up the statements she gave to police indicating that the men in her car told her about the shooting and robbery at CVS because Morrissette told her that she was going to be charged with "two counts of attempted murder and first-degree." However, as the undisputed facts in the PSI make clear, a review of the videotape of the interview revealed that the interview was conducted by Detective Brignac, not Morrissette, and Thomas never complained about any alleged threats made by Morrissette. A jury convicted Thomas on both counts as charged in the indictment.

The PSI set Thomas's offense level at 14, pursuant to U.S.S.G. § 2J1.4. Two levels were added for obstruction of justice, pursuant to U.S.S.G. § 3C1.1, because Thomas provided false testimony during her trial concerning statements made to police and to the grand jury under oath. Thomas received no reductions for a total offense level of 16. Thomas had no assessable criminal history, for criminal history category I, which, at offense level 16, provided for an advisory guidelines range of 21 to 27 months' imprisonment.

At sentencing, Thomas objected to the obstruction of justice enhancement for providing false testimony during her jury trial, which was not charged. The court found that Thomas perjured herself during the trial on several occasions,

including stating to the jury that she made up the fact that she had been told about the robbery and denying telling police that the men had robbed the CVS. The court further found that Thomas lied about when the handcuffs were removed and by testifying that she got the information about CVS from Morrissette. Thomas's objection, therefore, was overruled. At sentencing the court reiterated that it was adamant in its belief that Thomas had lied, and it found it "unbelievable" that she had chosen to go to trial and lie again. In particular, the court said, "because you lied and lied and continued to lie in trial, you are getting a twenty-one month sentence. It's sad. . . . But I think it's the right sentence." Moreover the court did not choose to exercise its discretion to depart from the advisory guidelines range. The court then adopted the findings from the PSI and imposed a low-end guidelines sentence of 21 months' imprisonment on each count to run concurrently.

## I. Motion to Suppress

On appeal, Thomas argues that the district court erred by denying her motion to suppress statements she made to police. Specifically, she argues that the court erred by finding that a reasonable person would not have believed she was in custody, and, therefore, erred by finding that she was not entitled to Miranda warnings. Thomas argues that the totality of the circumstances, including being

9

separated from her mother and taken in a police cruiser to the police station for questioning, demonstrate that a reasonable person would not have felt "free to leave."

We review "the district court's findings of fact on a motion to suppress evidence for clear error and the district court's application of the law to those facts de novo." United States v. Chirinos, 112 F.3d 1089, 1102 (11th Cir. 1997). When considering a ruling on a motion to suppress, all facts are construed in a light most favorable to the successful party. United States v. Behety, 32 F.3d 503, 510 (11th Cir. 1994). We will not reverse a district court's factual findings unless "contrary to the laws of nature, or . . . so inconsistent or improbable on [their] face that no reasonable factfinder could accept [them]." United States v. Pineiro, 389 F.3d 1359, 1366 (11th Cir. 2004).

In Miranda v. Arizona, the Supreme Court considered the scope of the Fifth Amendment privilege against self-incrimination and held that the government "may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation from the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966). "A defendant is in custody for the purposes of Miranda when there has

10

been a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." United States v. Brown, 441 F.3d 1330, 1347 (11th Cir. 2006) (quotation and citation omitted). "Whether [the defendant] was in custody prior to his formal arrest depends on whether under the totality of the circumstances, a reasonable man in his position would feel a restraint on his freedom of movement to such extent that he would not feel free to leave." Id. "The test is objective: the actual, subjective beliefs of the defendant and the interviewing officer on whether the defendant was free to leave are irrelevant." Id. "[U]nder the objective standard, the reasonable person from whose perspective custody is defined is a reasonable innocent person." Id. (emph. in original).

Taking the facts in a light most favorable to the government, we readily conclude that the district court did not err by denying Thomas's motion to suppress. Although Thomas was handcuffed immediately after arriving at her home, Morrissette testified that the handcuffs were removed before he questioned Thomas, and, significantly, he informed Thomas that she was not under arrest. Thomas's own mother confirmed that Morrissette was not handcuffed while Morrissette talked with her, nor was she handcuffed when she entered Morrissette's police cruiser to give her statement at the police station. Cf. United States v. Blackman, 66 F.3d 1572, 1576 (11th Cir. 1995) (noting that "the fact that

11

police handcuff the person . . . does not, as a matter of course, transform an investigatory stop into an arrest."). Morrissette further testified that Thomas voluntarily went with him to the police station, sat in the front, not the back seat of the cruiser, made several phone calls on her cell phone, both while she was at her home and in the cruiser, and returned home with her family after about one hour. The only fact that weighs in Thomas's favor is that Morrissette advised her that, if she drove the car and helped the CVS robbers escape, she could get in trouble. However, Morrissette never indicated that Thomas was to be charged for anything. Under the totality of the circumstances, we conclude that Morrissette's freedom of movement was not restrained to the degree associated with a formal arrest, and, therefore, she was not in custody for purposes of Miranda. See California v. Beheler, 463 U.S. 1121, 1121-22, 103 S.Ct. 3517, 3518, 77 L.Ed.2d 1275 (1983) (holding that Miranda warnings are not required if the person is not placed under arrest, voluntarily comes to the police station, and is allowed to leave unhindered by police after a brief interview). Thus, the district court properly denied Thomas's motion to suppress.

## II. Motion to Disqualify

Next, Thomas argues that the district court erred by failing to remove the prosecutor from the case because he also prosecuted the underlying robbery, which

12

entailed questioning Thomas before the grand jury. Thomas argues that the prosecutor was a potential witness in the case because his "credibility was placed before the jury by the utilization of the questions asked by him to Thomas, eliciting the answers which [the] prosecutor later contended constituted the perjury charge in this matter." Thomas further argues that the prosecutor's responses to her answers—warning her about the commission of perjury—constituted indirect testimony that violated the rule that the prosecutor cannot act as both prosecutor and witness.

The decision whether to disqualify the prosecuting attorney because he was "the sole witness whose testimony is necessary to establish essential facts otherwise not ascertainable," is reviewed for an abuse of discretion. United States v. Hosford, 782 F.2d 936, 939 n.3 (11th Cir. 1986). That the prosecutor indirectly testified by introducing the grand jury transcript was a theory not raised before the district court, and, ordinarily, this Court will not address the issue. Id. at 938 n.1. However, because the issue is a question of law, we, as we did in Hosford, choose to exercise our discretion and will address the question. Id.

"It is clear that a prosecutor must not act as both prosecutor and witness." Id. at 938. "This is a part of the general 'advocate-witness' rule that counsel should avoid appearing as both advocate and witness except under extraordinary

13

circumstances." Id. However, "mere first-hand knowledge of facts that will be proved at trial is not a per se bar to representation." Id. We have further stated that it would be

> improper for a government attorney who has independent personal knowledge about facts that will be controverted at the trial to act as prosecutor (1) if he uses that inside information to testify indirectly by implying to the jury that he has special knowledge or insight, or (2) if he is selected as prosecutor when it is obvious he is the sole witness whose testimony is necessary to establish essential facts otherwise not ascertainable.

Id. at 939.

At issue here is the introduction of the grand jury transcript containing Thomas's perjured testimony because the same prosecutor trying the instant case against her was also the prosecutor questioning Thomas at the grand jury proceeding. However, the prosecutor's testimony was clearly unnecessary to establish the essential facts of the case. The transcript itself contained the relevant information, and, to the extent the conduct, demeanor, or content of the questions and answers was even relevant, two other witnesses—court reporter Keith Kennedy and FBI Agent Greg Gauger—were both present at the grand jury proceedings and available for examination by Thomas. The prosecutor's mere first-hand knowledge of facts that would be proved at trial was not sufficient, in and of itself, to either create a compelling need to call him as a witness, or to

14

disqualify him from prosecuting the case.  Accordingly, we conclude the district court did not abuse its discretion by denying Thomas's motion on this ground.

As to the "indirect testimony," or de facto witness argument, see Hosford, 782 F.2d at 938, we conclude that Thomas's argument is meritless.  In Hosford, we rejected the argument that the prosecutor should have been disqualified from prosecuting the defendant for soliciting and attempting murder because he had participated in the negotiations for a use and immunity agreement that the government alleged the defendant had violated, enabling his prosecution.  Id. at 937, 939.  We found that all references at trial to the prosecutor's participation had been made in passing and the prosecutor at no point implied he was privy to special knowledge about the agreement.  Id. at 939.  In the instant case, the only reference to the prosecutor's participation in the grand jury testimony was made by the court reporter, Kennedy, who identified the grand jury transcript as "the testimony of Meenya Thomas on March 30, 2005, conducted by yourself."  This clearly was a passing reference.  Moreover, at no point did the prosecutor imply that he was privy to special knowledge about the grand jury proceedings.  The transcript was read for the jury's benefit, the statements made to police were presented, and Thomas herself testified consistent with her grand jury testimony, giving the jury in Thomas's perjury trial all the evidence it needed to sustain a

15

conviction. The prosecutor never highlighted his involvement and never intimated to the jury that he had special knowledge about whether or not Thomas had perjured herself. The evidence spoke for itself, and the jury convicted her. Like in Hosford, we conclude that no reversible error has been shown.

### III. Obstruction of Justice

On appeal, Thomas argues that the district court should not have applied a two-level enhancement for obstruction of justice under U.S.S.G. § 3C1.1. She concedes that her trial testimony was material, but argues that it was not false and she had no intent to provide false testimony. Thomas also argues that the statements she gave to law enforcement officers were not made under oath and that, only when placed under oath before the grand jury, did she make statements inconsistent with the statements to law enforcement. Because her testimony during trial was the same as that given to the grand jury, she argues the obstruction enhancement is inappropriate and leads to a chilling effect on a defendant's right to testify. Thomas further argues that, while the jury's determination of guilt was a ruling that she had falsely testified to the grand jury, the district court should not have punished her for insisting upon what she maintained was the truth—that her statements to law enforcement were inaccurate. By doing so, Thomas argues the court encouraged people who give false information to the police to continue to

16

repeat such false information for fear of perjury and a possible sentencing enhancement. She further argues that, by enhancing her sentence, the district court "double punished" her. Finally, Thomas argues that the district court failed to make sufficient findings regarding her false statements.

When a district court imposes an enhancement for obstruction of justice, we review the district court's factual findings for clear error and its application of the Sentencing Guidelines to those facts de novo. United States v. Massey, 443 F.3d 814, 818 (11th Cir. 2006). If, however, the defendant fails to clearly state the grounds for his objection, we will review only for plain error. Id. "An appellate court may not correct an error the defendant failed to raise in the district court unless there is: (1) error, (2) that is plain, and (3) that affects substantial rights . . . [and then] only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id.

> Section 3C1.1 of the guidelines provides for a two-level enhancement if: (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offence of conviction, and (B) the obstructive conduct related to (I) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense.

U.S.S.G. § 3C1.1. Among the several examples of conduct making a § 3C1.1 enhancement appropriate is committing perjury. U.S.S.G. § 3C1.1, comment.

(n.4(b)). Moreover, the Supreme Court has held that "if a defendant objects to a sentence enhancement resulting from her trial testimony, a district court must review the evidence and make independent findings necessary to establish a willful impediment to or obstruction of justice." United States v. Dunnigan, 507 U.S. 87, 95, 113 S.Ct. 1111, 1117, 122 L.Ed.2d 445 (1993).

Here, a jury convicted Thomas for perjury before the grand jury, and, at trial Thomas testified in her own behalf and maintained, as she did before the grand jury, that her statements to law enforcement were inaccurate. As the jury convicted her for perjury based on those statements to the grand jury, it follows that Thomas's trial testimony, given under oath, was also perjured. Moreover, while Thomas did not object to the sufficiency of the court's findings, a plain error review shows that the district court explicitly found that Thomas lied at trial regarding making up her statements to the police and the less material statements about being handcuffed. Thus, the court found that Thomas had perjured herself at trial, and applied the enhancement. Based on the foregoing, application of the enhancement was not improper and the court's findings were sufficient.

As to Thomas's argument regarding infringement of her right to testify, the Supreme Court in Dunnigan rejected that argument outright. Dunnigan, 507 U.S. at 96, 113 S.Ct. at 1117. Thomas's remaining argument is that application of the

18

enhancement resulted in double counting. She did not, however, object on this ground in district court, and we will only review for plain error. "Impermissible double counting occurs only when one part of the Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by application of another part of the Guidelines." United States v. Uscinski, 369 F.3d 1243, 1247 (11th Cir. 2004). "Double counting is permitted if the Sentencing Commission intended the result, and if the result is permissible because each section concerns conceptually separate notions related to sentencing." Id.

Here the district court's application of the obstruction enhancement punished a separate harm apart from her perjured grand jury testimony—the enhancement punished her for perjuring herself a second time before the jury in her criminal trial. Cf. Uscinski, 369 F.3d at 1247-48 (upholding the application of an obstruction enhancement to a defendant convicted of tax evasion because the defendant's false statements were intended to prevent the government from discovering his tax evasion, a separate and distinct notion from the tax evasion itself).

However, this point does not fully dispose of this issue. Although neither party notes it, the Sentencing Commission did not intend for the obstruction

19

enhancement to be applied to a situation such as Thomas's. Although Thomas was convicted of perjury before the grand jury, an obstruction of an investigation separate from her own trial, and later perjured herself again during her own trial, a separate act of obstruction that ordinarily would call for the enhancement, the Guidelines themselves explicitly except Thomas's conduct from application of the enhancement, and, therefore, double counting occurred here. The commentary to § 3C1.1 states that

> [i]f the defendant is convicted of an offense covered by . . . § 2J1.3 (Perjury or Subornation of Perjury; Bribery of a Witness) . . . this adjustment is not to be applied to the offense level for that offense except if a significant further obstruction occurred during the investigation, prosecution, or sentencing of the obstruction offense itself (e.g., if the defendant threatened a witness during the course of the prosecution for the obstruction offense).

U.S.S.G. § 3C1.1, comment. (n.7). Thomas's offense level was covered under § 2J1.3, and, thus, on its face, the adjustment should not have been applied to Thomas unless she did something that would be considered a "significant further obstruction." Cf. United States v. Hughes, 401 F.3d 540, 559 (4th Cir. 2005) (persuasively noting that note 7 "prohibits an obstruction enhancement if the defendant's underlying conviction is itself for an obstruction offense, unless the conduct further obstructed the investigation, prosecution, or sentencing of the obstruction offense significantly.").

20

In the instant case, Thomas did not threaten a witness. The most that can be said is that she maintained the same story at trial as she did before the grand jury—that her statements made to police were inaccurate and made because of a threat of prosecution. There does not appear to be any significant further obstruction by Thomas testifying consistent with the grand jury testimony that formed the basis for her criminal conviction for perjury. Under these circumstances, it appears that the Sentencing Commission believed that the base offense level for perjury, U.S.S.G. § 2J1.3, adequately took into account the obvious obstruction of justice in perjury, but contemplated an additional two levels only for a further "significant" obstruction.

We have identified no cases from this or any other circuit, however, that have applied § 3C1.1, comment. (n.7) to a situation such as this. We previously have held that, "at least where the explicit language of a statute or rule does not specifically resolve an issue, there can be no plain error where there is no precedent from the Supreme Court or this Court directly resolving it." United States v. Lejarde-Rada, 319 F.3d 1288, 1291 (11th Cir. 2003). Given the explicit language of the commentary, we find that the district court probably committed an error that was plain by applying the enhancement in this case.

The next question is whether, under prongs (3) and (4), Thomas's substantial

21

rights were violated and the error seriously affected the fairness, integrity, or public reputation of judicial proceedings. Massey, 443 F.3d at 818. Under prong (3), we have held that the burden of proving that the error made a difference lies with the defendant, and, therefore, where the effect of the error is uncertain, no plain error exists. United States v. Rodriguez, 398 F.3d 1291, 1300 (11th Cir.), cert. denied 125 S.Ct. 2935 (2005). Here, the district court was adamant that it believed Thomas had lied, and it found it "unbelievable" that she had chosen to go to trial and lie again. In particular, the court said, "because you lied and lied and continued to lie in trial, you are getting a twenty-one month sentence. It's sad. . . . But I think it's the right sentence." Moreover the court did not choose to exercise its discretion to depart from the advisory guidelines range.

First, it is noted that, if the two-level enhancement had not been added, Thomas's offense level would have been 14, which would have provided for an advisory range of 15 to 21 months. U.S.S.G. App. G. The sentencing judge made it clear that under all the circumstances of this case a sentence of 21 months was the "right sentence." Therefore, Thomas has failed to show that any error resulted in harm or prejudice. Consequently, no violation of her substantial rights occurred. And, in addition, any possible error did not affect the fairness, integrity or public reputation of judicial proceedings.

Thomas's 21-month sentence was within the advisory sentencing range with or without the enhancement, which, although not a per se sign of reasonableness, see United States v. Talley, 431 F.3d 784, 787 (11th Cir. 2005), appears entirely reasonable in light of the fact that Thomas was convicted of perjury and further perjured herself again at trial. The maximum sentence was five years' imprisonment, and Thomas's 21-month sentence is not even half that.

In sum, we conclude that the district court did not err by denying Thomas's motion to suppress, did not err by failing to disqualify the prosecuting attorney, and did not commit an error requiring a remand by applying the two-level enhancement for obstruction of justice and sentencing Thomas to 21 months' imprisonment. We, therefore, affirm.

**AFFIRMED.**