[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-13405
Non-Argument Calendar
_____

D.C. Docket No. 1:12-cr-00205-ODE-ECS-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

WOODROW RUDOLPH DIXON, JR.,
a.k.a. Dro,
KIRK L. FLOYD,
a.k.a. Twin,
a.k.a. Kirk Lorin Floyd,

Defendants-Appellants.

_____

No. 14-13414
Non-Argument Calendar

_____

D.C. Docket No.  1:13-cr-00476-ODE-ECS-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CORNELIUS BERNARD WILSON,
a.k.a. Dog-man,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Northern District of Georgia
_____

(September 18, 2015)

Before ED CARNES, Chief Judge, TJOFLAT and WILSON, Circuit Judges.

PER CURIAM:

Woodrow Rudolph Dixon, Jr., Kirk. L. Floyd, and Cornelius Bernard Wilson appeal convictions and sentences arising from their conspiracy to rob a cocaine stash house.  Unknown to them, there was no cocaine stash and no house.  After the Bureau of Alcohol, Tobacco, and Firearms (ATF) learned that Dixon wanted to rob a drug dealer, it launched a reverse sting operation, creating the ruse of a fake stash house and arresting Dixon, Floyd, and Wilson after they had taken substantial steps to prepare for the robbery.

Wilson pleaded guilty to one count of conspiracy to possess with intent to distribute at least five kilograms of cocaine, 21 U.S.C. §§ 841(a)(1),

2

841(b)(1)(A)(ii) and 846, and one count of carrying a firearm during and in relation to a crime of violence, 18 U.S.C. § 924(c)(1)(A)(i).[1]  Dixon and Floyd had a joint trial and the jury found them guilty on one count each of conspiracy to commit Hobbs Act robbery, 18 U.S.C. § 1951(a); carrying a firearm during and in relation to a crime of violence, 18 U.S.C. §§ 924(c)(1)(A)(i), 924(c)(1)(B)(i) and 2; and conspiracy to possess with intent to distribute at least five kilograms of cocaine, 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii) and 846.  Floyd was also convicted on one count of possession of a firearm by a convicted felon, 18 U.S.C. §§ 922(g)(1) and 2.  The district court imposed mandatory minimum sentences for their convictions — 20 years for Dixon, 25 years for Floyd, and 15 years for Wilson.

Dixon, Floyd, and Wilson raise five contentions in this consolidated appeal. First, all three contend that the indictment should have been dismissed because the reverse sting operation constituted outrageous government conduct.  Second, Wilson contends that the district court abused its discretion by denying a motion to withdraw his guilty plea.  Third, Floyd contends that the district court abused its discretion in admitting statements in which he alluded to shooting and potentially killing a person in a previous stash house robbery.  Fourth, Dixon and Floyd contend that the district court plainly erred in failing to instruct the jury on

---

[1] Another co-conspirator, Krisdeon Slack, also pleaded guilty.  Slack testified for the government at Dixon and Floyd's trial, but Wilson did not.

3

sentence entrapment.  Fifth, Dixon and Floyd contend that the district court abused its discretion when it declined to adjust their sentences due to sentencing factor manipulation.

I.

In early 2012, the ATF received information that Dixon wanted to rob a drug dealer named "Tony."  "Tony" was actually a government agent posing as a drug buyer as part of an undercover effort to investigate Dixon for cocaine distribution. Dixon came into contact with Tony through the efforts of a confidential informant named Brian Guyton, and Dixon told Guyton that he wanted to rob Tony.  Dixon explained to Guyton that robbing drug dealers (as opposed to selling drugs) was what he really did, that he had robbed a drug dealer in the past, and that he had a "crew" for these robberies.

When the ATF learned of Dixon's proposal, it used Guyton to feed information to Dixon about Tony's supposed stash house.  Dixon, believing the stash house to be real, recruited accomplices — Floyd, Wilson, and Krisdeon Slack — to rob it.  The ATF also used Guyton to introduce two undercover agents to Dixon.  These agents, going by the names of "Shawn" and "Toby," posed as discontented associates of Tony who, in exchange for a share of the loot, would give Dixon inside information on the location of the stash house and when to rob

4

it.  Shawn told Dixon that he could guarantee that at least 25 kilograms of cocaine would be in the stash house.

Dixon hashed out the details of the robbery plan with Floyd, Wilson, Guyton, and the undercover agents over the course of several meetings and phone conversations.  He came up with the basic plan for them to carry out the robbery by posing as police officers.  At Dixon and Floyd's request, Guyton obtained an SUV (which the ATF provided to him) to lend authenticity to their disguise as police officers.  During these meetings, the undercover agents gave Dixon and Floyd opportunities to back out of the robbery, but the two of them confirmed that the crew was ready, willing, and able to carry it out.

The day before the robbery, Dixon told Guyton that he would have to miss the robbery due to an out-of-town work assignment, but that Floyd would be in charge.  On the day of the robbery, Floyd, Guyton, Wilson, and Slack (Dixon's replacement) met to go over the final details.  Floyd also brought equipment — guns, police badges, and police vests.  Shawn then called Floyd, telling him to meet at a storage facility.  When Guyton, Floyd, Wilson, and Slack arrived, law enforcement converged on the car and arrested them.  Dixon was arrested when he returned to Atlanta.

5

II.

Dixon and Floyd contend that the district court plainly erred in failing to dismiss the indictment because the government's extensive involvement in setting up and executing the reverse sting operation amounted to outrageous conduct.[2] The "outrageous government conduct" defense focuses on whether "the tactics employed by law enforcement officials to obtain a conviction for conduct beyond the defendant's predisposition" violate the Fifth Amendment's due process guarantee. United States v. Sanchez, 138 F.3d 1410, 1413 (11th Cir. 1998). The government contends that this Court's precedent has rejected due process challenges to reverse sting operations involving fake stash houses.

We review Dixon and Floyd's outrageous government conduct challenge under the plain error standard because they did not raise it in the district court. United States v. Augustin, 661 F.3d 1105, 1122 (11th Cir. 2011). Under plain error review, an appellate court "may not correct an error the defendant failed to raise in the district court unless there is: (1) error, (2) that is plain, and (3) that affects substantial rights." United States v. Rodriguez, 398 F.3d 1291, 1298 (11th

---

[2] Wilson also raises this argument, but because he pleaded guilty he has waived this non-jurisdictional challenge to his plea. See United States v. Augustin, 661 F.3d 1105, 1122 (11th Cir. 2011) (noting that an outrageous government conduct challenge is non-jurisdictional); Wilson v. United States, 962 F.2d 996, 997 (11th Cir. 1992) ("A defendant who enters a plea of guilty waives all nonjurisdictional challenges to the constitutionality of the conviction, and only an attack on the voluntary and knowing nature of the plea can be sustained."). For the reasons stated below in Part III, we find that Wilson's plea was voluntary and knowing, and therefore we do not reach the merits of his outrageous government conduct challenge.

6

Cir. 2005) (quotation marks omitted).  There is no plain error where "there is no precedent from the Supreme Court or this Court directly resolving" the issue. United States v. Joseph, 709 F.3d 1082, 1095–96 (11th Cir. 2013) (quotation marks omitted).  If all these conditions are satisfied, an appellate court "may then exercise its discretion to notice a forfeited error, but only if . . . the error seriously affects the fairness, integrity, or public reputation of judicial proceedings."  Id. (quotation marks omitted).  Plain error review "should be exercised sparingly," and the test "places a daunting obstacle before the appellant."  Id. (quotation marks and alterations omitted).

The district court did not err, much less plainly err, when it did not dismiss the indictment.  This Court has repeatedly approved reverse sting operations of the kind used in this case.  See Sanchez, 138 F.3d at 1413 (collecting cases). Moreover, this defense can "only be invoked in the rarest and most outrageous circumstances."  United States v. Haimowitz, 725 F.2d 1561, 1577 (11th Cir. 1984) (quotation marks omitted).  This Court has yet to see government conduct that rises to the level of outrageousness required for the defense to succeed.  United States v. Jayyousi, 657 F.3d 1085, 1111 (11th Cir. 2011) ("We have never applied the outrageous government conduct defense and have discussed it only in dicta."); see also United States v. Ciszkowski, 492 F.3d 1264, 1272 (11th Cir. 2007) (Carnes, J., concurring) ("Unless and until we actually see government conduct

7

outrageous enough to motivate a panel of this Court to set aside a conviction . . . [this] defense[] cannot be found in the law of this circuit."). Without binding precedent that actually establishes the <u>existence</u> of the outrageous government conduct defense — or precedent that directly forbids the kind of reverse sting operation used here — Dixon and Floyd's plain error argument cannot succeed. <u>See</u> <u>Joseph</u>, 709 F.3d at 1095–96.

## III.

Wilson contends that the district court abused its discretion in denying his motion to withdraw his guilty plea before sentencing. He argues that there was no factual basis for the plea because an affidavit from Dixon (which Wilson filed before he pleaded guilty) stated that he was not involved in the robbery plan. He also alleges that his counsel "abandoned" him during the plea process. The government contends that Wilson's counsel closely assisted him and that his plea was knowing and voluntary.

A defendant has no absolute right to withdraw his guilty plea before sentencing. <u>United States v. Buckles</u>, 843 F.2d 469, 471 (11th Cir. 1988). District courts can look at the "totality of the circumstances surrounding the plea," <u>id.</u> at 471–72, to gauge if the defendant has met the burden of showing "a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). These circumstances include: "(1) whether close assistance of counsel was available; (2)

whether the plea was knowing and voluntary; (3) whether judicial resources would be conserved; and (4) whether the government would be prejudiced if the defendant were allowed to withdraw his plea." Buckles, 843 F.2d at 471–72. "We review the district court's decision under an abuse of discretion standard," and we can reverse only if the decision is "arbitrary or unreasonable." Id. at 471.

The district court did not abuse its discretion in denying Wilson's motion to withdraw in light of the facts surrounding the plea and his statements at the plea colloquy. Wilson filed the Dixon affidavit before he pleaded guilty and yet decided to plead guilty anyway. His lawyer negotiated with the government to recommend a lower sentence through the plea agreement compared to what he would have faced under the indictment, indicating that he did receive close assistance of counsel. At the plea colloquy, he testified that his lawyer adequately assisted him and that he was satisfied with his services. He testified that he was with the robbery crew and knew what they were all going to do. He also testified that he understood the charges against him, that he wanted to plead guilty, and that he was making the plea voluntarily. The record does not support his attempt to override the statements he made at the plea colloquy. See United States v. Medlock, 12 F.3d 185, 187 (11th Cir. 1994) ("There is a strong presumption that the statements made during the [plea] colloquy are true."). The district court acted

neither arbitrarily nor unreasonably in denying Wilson's motion to withdraw his guilty plea.

## IV.

Floyd challenges the admission of testimony relating to his previous robbery of a stash house in North Carolina on the grounds that it violated Federal Rule of Evidence 404(b).  Slack testified that Floyd told him he had been involved in a stash house robbery in North Carolina and that Floyd had brought up the robbery on two later occasions.  On the first occasion, Floyd said he should get a "teardrop" tattoo to signify that he had killed someone.  On the second occasion, he alluded to killing someone outside of Georgia.

Floyd argues that the government did not properly link those two statements to the North Carolina stash house robbery, and therefore they are only probative of Floyd's character to commit murder, instead of his intent to conspire to rob the stash house.  See Fed. R. Evid. 404(b) ("Evidence of other crimes, wrongs, or acts is not admissible in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of . . . intent . . . .").  The government contends that the statements were properly admitted under Rule 404(b) because they are probative of his intent and (because Floyd raised an entrapment defense) his predisposition to rob a stash house with a firearm.  See United States v. Duran, 596 F.3d 1283, 1298–99 (11th Cir. 2010) (providing that

10

evidence of a defendant's prior similar acts to show predisposition is admissible to rebut an entrapment defense and is not "subject to the normal constraints of evidence admitted pursuant to Rule 404(b)").

"We review the district court's evidentiary decision for abuse of discretion." United States v. Chavez, 204 F.3d 1305, 1316 (11th Cir. 2000).[3]  Even assuming that the district court abused its discretion in admitting the testimony about the teardrop tattoo and the potential killing outside of Georgia, it was harmless error. United States v. Hosford, 782 F.2d 936, 939 (11th Cir. 1986) (reviewing for harmless error evidence admitted under Rule 404(b)).  The evidence showed that Floyd took part in the robbery-planning meetings with Dixon, the undercover agents, and Guyton.  He repeatedly affirmed his willingness to do the job, even stating that he "was really hungry to get this job done."  Floyd was aware that the goal of the robbery was to steal cocaine, as he asked one of the agents how much of it would be in the stash house.  And when Dixon could not be present on the day of the robbery, Floyd took charge — he organized the meeting before the crew headed off to the storage facility and supplied the equipment and guns.  Because the government presented overwhelming evidence of Floyd's guilt, Slack's

---

[3] The government argues that plain error is the proper standard of review because Floyd did not specifically object at trial to the two statements that form the basis of his argument on appeal.  Floyd argues that his motion in limine and trial objection to Slack's entire testimony covers the argument he now makes.  We need not resolve this dispute because even if the strictures of the plain error rule do not apply, the outcome is the same.

testimony (even if wrongly admitted) was harmless.  See United States v. Guzman, 167 F.3d 1350, 1353 (11th Cir. 1999) (observing that "[o]verwhelming evidence of guilt is one factor that may be considered in finding harmless error").[4]

## V.

Dixon and Floyd contend that the district court plainly erred when it failed to instruct the jury on sentence entrapment.  "Sentenc[e] entrapment is the claim that a defendant, although predisposed to commit a minor or lesser offense, is entrapped into committing a greater offense subject to greater punishment." Sanchez, 138 F.3d at 1414.  Because neither Dixon nor Floyd raised this challenge in the district court, we review only for plain error.  Rodriguez, 398 F.3d at 1298. This challenge fails as a matter of law because "this Circuit has rejected sentence entrapment as a viable defense."  Sanchez, 138 F.3d at 1414.[5]

---

[4] The district court also instructed the jury that it should only consider Slack's testimony for the purposes permitted by Rule 404(b) (such as intent, plan, or absence of mistake) and predisposition.  These limiting instructions reduced the risk (if any) that Slack's testimony impermissibly prejudiced Floyd, further establishing that Slack's testimony was harmless.  See United States v. Ramirez, 426 F.3d 1344, 1354 (11th Cir. 2005) (noting that "the risk of undue prejudice to [the defendant] was reduced by the court's limiting instruction" where the court admitted evidence of prior bad acts under Rule 404(b)); United States v. Stone, 9 F.3d 934, 938 (11th Cir. 1993) ("Few tenets are more fundamental to our jury trial system than the presumption that juries obey the court's instructions.").

[5] Dixon argues that the Supreme Court's decision in Alleyne v. United States, ___ U.S. ___, 131 S. Ct. 2151, 2155 (2013) (holding that any fact that increases the mandatory minimum sentence for a crime must be submitted to the jury and found beyond a reasonable doubt), requires us to recognize this defense.  Because no decision of this Court or the Supreme Court "directly resolve[s]" the issue of how Alleyne impacts the availability of a sentence entrapment defense (if at all), that argument fails under plain error review.  See Joseph, 709 F.3d at 1096.

12

VI.

Dixon and Floyd also challenge their sentences on the ground of sentencing factor manipulation.[6] Sentencing factor manipulation "occurs when the government's manipulation of a sting operation . . . requires that the manipulation be filtered out of the sentencing calculus." Ciszkowski, 492 F.3d at 1270. A defendant must show that the government engaged in "extraordinary misconduct" to show sentencing factor manipulation. Id. at 1271. Dixon contends that the government's extensive involvement in this operation amounts to extraordinary misconduct. Floyd contends that the government engaged in extraordinary misconduct because it allegedly conjured up the 25 kilogram number solely to increase his penalty exposure. The government contends that the ATF did not engage in extraordinary misconduct because this Court has approved operations with similar levels of government involvement. We review criminal sentences for reasonableness under a deferential abuse of discretion standard. United States v. Irey, 612 F.3d 1160, 1165, 1188–89 (11th Cir. 2010) (en banc).

---

[6] Wilson adopted part of Dixon's argument about outrageous government conduct, but it is not clear from his brief if he also adopted the sentencing factor manipulation argument. Regardless, he cannot bring this challenge because he knowingly and voluntarily waived the right to appeal his conviction and sentence to the maximum extent that federal law permits (except that he reserved the right to appeal a sentence of more than 180 months, a right which does not apply here because he was sentenced to 180 months exactly). See United States v. Bushert, 997 F.2d 1343, 1350–51 (11th Cir. 1993) (stating that sentencing appeal waivers may be enforced if they are knowing and voluntary).

13

The district court did not abuse its discretion in rejecting this challenge. Like the defense of outrageous government conduct, it is not even clear that our precedent recognizes sentencing factor manipulation as a legitimate challenge to a sentence. United States v. Docampo, 573 F.3d 1091, 1097–98 (11th Cir. 2009) ("We have not yet recognized a defense of sentencing factor manipulation or permitted its application to a defendant's sentence . . . ."); see also Ciszkowski, 492 F.3d at 1272 (Carnes, J., concurring) (noting this point).

Assuming, however, for the sake of argument that sentencing factor manipulation is a legitimate defense, Dixon and Floyd cannot prevail on it because they have not shown that the government engaged in extraordinary misconduct. Dixon's argument fails because this Court has rejected challenges to reverse sting operations with similar levels of government involvement. See, e.g., Ciszkowski, 492 F.3d at 1267, 1271 (rejecting a sentencing factor manipulation challenge where a government informant initiated contact with the defendant, provided a gun, and gave him drugs and cash as payment before the arrest). Floyd's argument does not fare any better. The evidence at trial showed that in order to maintain the appearance of a bona fide stash house the government selected the 25 kilogram amount of cocaine based on what other Atlanta stash houses typically contain. This decision was permissible, despite its impact on Floyd's sentence. See id. at 1267, 1271 (finding no extraordinary misconduct where the government supplied

14

the defendant with a silencer-equipped pistol to keep up the ruse of a murder-for-hire operation, even though the use of the silencer added a 30 year mandatory minimum sentence).  The district court did not abuse its discretion in rejecting Dixon and Floyd's challenge.

**AFFIRMED.**